**DIGITAL EQUIPMENT CORPORATION,**
Plaintiff,

v.

**CURRIE ENTERPRISES,**
et al., Defendants.

**Civ. A. No. 91–11624–WD.**

United States District Court,
D. Massachusetts.

Feb. 12, 1992.

---

Thomas S. Chase, Jeremiah T. O'Sullivan, Andrew C. Griesinger, Choate, Hall & Stewart, Boston, Mass. (James P. Shaughnessy, Digital Equipment Corp., Maynard, Mass., of counsel), for plaintiff.

J. William Codinha, P.C., Sigmund J. Roos, Beth A. O'Neill, Peabody & Brown, Boston, Mass., for Warren K. Haeberle.

Nancy Gertner, Dwyer, Collora & Gertner, Boston, Mass., for Dennis Palmisciano.

Regina L. Quinlan, Boston, Mass., for Currie Enterprises.

Joseph J. Balliro, Boston, Mass., for Philip Mario Carnovale.

James B. Krasnoo, Boston, Mass., for John Trebendis.

Norman S. Zalkind, Robert L. Sheketoff, David Duncan, Zalkind, Sheketoff, Wilson Homan Rodriguez & Lunt, Boston, Mass., for Paul A. Cooperstein.

Michael R. Taylor, Gregory J. Angelini, Leominster, Mass., Bradford Blakeley, Wayland, Mass., for Joseph V. McGee.

William P. Homans, Homans, Hamilton & Dahman, Boston, Mass., for Fred Kleinerman.

## ORDER RE: MOTION OF RAYMOND B. CURRIE AND MARY J. CURRIE TO RECONSIDER AND/OR MODIFY ORDER APPROVING REAL ESTATE ATTACHMENT (DOCKET ENTRY # 103); and DEFENDANT RAYMOND B. CURRIE AND MARY J. CURRIE'S SECOND MOTION TO MODIFY ORDER OF ATTACHMENT AND TO RELEASE ESCROW FUNDS AND REQUEST FOR EXPEDITED ORAL ARGUMENT AND AN EXPEDITED HEARING (DOCKET ENTRY # 158)

BOWLER, United States Magistrate Judge.

Pending before this court are defendant Raymond B. Currie ("defendant Currie") and defendant Mary J. Currie's motions to modify this court's Order of attachment entered on August 20, 1991. (Docket Entry ## 103, 158). On December 17, 1991, this court held a hearing and took the motions under advisement.

### PROCEDURAL HISTORY

On August 6, 1991, this court issued an Order allowing Plaintiff's Motion for Real Estate Attachments. (Docket Entry # 90). In accordance with this Order, on August 20, 1991, this court approved four writs of attachment, including an attachment in the amount of $3,000,000 against property owned by defendants Raymond B. Currie and Mary J. Currie (collectively: "Currie

defendants").[1] (Docket Entry # 109). The two properties attached are owned by the Currie defendants and located at 56 Sterling Street, Clinton, Massachusetts, ("Sterling Street property") and at 99 Green Street, Clinton, Massachusetts ("Green Street property"). (Docket Entry ## 109 & 159, Ex. A & B).

Also on August 20, 1991, the Currie defendants filed a motion for this court to reconsider its Order approving the $3,000,-000 attachment. (Docket Entry # 103). Plaintiff Digital Equipment Corporation opposes the motion for reconsideration. (Docket Entry # 116).

Because of a potential sale of the Green Street property, the Currie defendants filed a motion for an expedited hearing on September 17, 1991. (Docket Entry # 131). On September 20, 1991, the district judge heard this motion. (Docket Entry # 138).

On September 27, 1991, the Currie defendants filed a motion for a further hearing on the motion to reconsider the attachment (Docket Entry # 140) which this court allowed by Endorsed Order on December 17, 1991. On October 8, 1991, the plaintiff and the Currie defendants filed a stipulation. Pursuant to this stipulation, the Currie defendants sold the Green Street property to the Weetabix Company, Inc. and placed two checks in the amounts of $1,240,000 and $23,919.21 in escrow as prejudgment security for the plaintiff. (Docket Entry # 158).

On November 15, 1991, the Currie defendants filed their second motion to modify the attachment. (Docket Entry # 158). The plaintiff opposes a second reconsideration. (Docket Entry # 159). The Currie defendants subsequently filed supplemental exhibits as well as a response to the plaintiff's opposition. (Docket Entry ## 161, 162).

---

1. Although this court's initial Order allowing the attachment did not include a finding of reasonable likelihood of success, the subsequent order approving the writs of attachment made a finding that there is a reasonable likelihood that plaintiff Digital Equipment Corporation will recover judgment in an amount equal to or greater than the amount of the attachment over and above the liability insurance of defendants Currie, Edward F. Desmond, Fred P. Kleinerman and Joseph V. McGee. (Docket Entry ## 90, 109).

On December 17, 1991, this court held a hearing on the motions to modify the attachment (Docket Entry ## 103, 158), admitted a number of exhibits into evidence, and heard the testimony of defendant Currie.[2] In the second motion to modify the attachment (Docket Entry # 158), the Currie defendants seek an order reducing or discharging the $3,000,000 attachment on the Green Street and Sterling Street properties pursuant to Section 114 of Massachusetts General Laws chapter 223.[3] The Currie defendants argue that release of the funds in escrow is necessary because of their strained financial resources.[4] In addition, they contend that: (1) the plaintiff fails to offer credible evidence that there is a reasonable likelihood of success on the merits; (2) the appraised value of the Sterling Street property amounts to $3,000,000 and therefore provides adequate prejudgment security; (3) the amount of the attachment is excessive inasmuch as the plaintiff fails to offer any basis for the $3,000,000 figure; and (4) the Massachusetts attachment statute violates due process in light of the Supreme Court's recent decision of *Connecticut v. Doehr*, — U.S. —, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991). These arguments are addressed *seriatim*.

## DISCUSSION

Fed.R.Civ.P. 64 governs the procedure for the prejudgment remedy of attachment. This rule provides in pertinent part:

all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held, existing at the time the remedy is sought.

Fed.R.Civ.P. 64. The Massachusetts law controlling the procedure for motions for attachment is located in Rule 4.1 of the Massachusetts Rules of Civil Procedure. To enter an order of approval of a real estate attachment, this court must find the existence of a reasonable likelihood that the plaintiff will recover judgment in an amount equal to or greater than the amount of the attachment, over and above any liability insurance known or reasonably known to be available to the defendants. Mass.R.Civ.P. 4.1. Affidavit(s), setting forth specific facts and based upon an affiant's own knowledge, information or belief shall accompany the motion for attachment. Mass.R.Civ.P. 4.1(h).

■ "[T]he central question on the motion for approval of attachment is whether plaintiffs are likely to prevail on the merits and obtain damages in the necessary amount." *Anderson Foreign Motors Corp. v. New England Toyota Distributor, Inc.*, 475 F.Supp. 973, 978 (D.Mass. 1979). A showing of reasonable likelihood of success on the merits is therefore a requirement for court approval of an attachment. *Boston Trading Group, Inc. v. Carter*, 561 F.Supp. 1175, 1176 (D.Mass. 1983).

## I. REASONABLE LIKELIHOOD OF SUCCESS

### A. BACKGROUND

In the underlying action, the plaintiff

---

2. In the Currie defendants' first motion to modify the attachment (Docket Entry # 103), the Currie defendants raise grounds similar to those raised in their second motion to modify (Docket Entry # 158). Without elaboration and without providing this court with a memorandum in support as required under LR. 7.1(A)(1), however, the Currie defendants state that they have a good defense to this action as reflected in their answer. (Docket Entry ## 103, 158, Currie Affidavit, ¶ 26). Their answer, however, contains 45 affirmative defenses. (Docket Entry

# 91). This court will therefore not address this conclusory argument.

3. This section provides for the reduction or discharge of an "excessive or unreasonable attachment." Mass.Gen.L. ch. 223, § 114.

4. The Currie defendants are willing to consent to an attachment in the nature of a lien on the proceeds of any recovery in their suit against defendants Desmond and Carlyle–Omni in Massachusetts Superior Court. Such a recovery, if

alleges that the defendants[5] violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962, *et seq.* ("RICO"), and the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a).[6] The plaintiff also brings a number of pendent state law claims.

As to defendant Currie, the plaintiff specifically alleges a violation of 18 U.S.C. § 1962(a). (Docket Entry # 1, ¶ 73). Defendant Currie purportedly invested income derived from a pattern of racketeering activity in the acquisition and establishment of an enterprise. The enterprise allegedly includes both Currie Enterprises and C & M Real Estate Trust. (Docket Entry # 1, ¶ 73).[7]

In 1984, defendant Currie formed Currie Enterprises, Inc., for the purpose of buying overstocked or defective computer components and reclaiming precious metals from scrap components. From 1984 to 1988, Currie Enterprises, which also did business under the name of C & C Enterprises ("C & C"), employed defendants Currie, Desmond, Greg Currie and R. Paul Currie. In 1985, Kenneth B. Shiepe also began working for C & C. (Docket Entry # 34).

A general understanding existed between the plaintiff and defendant Currie that equipment obtained from the plaintiff "would either be immediately destroyed or if resold, would not be identifiable as Digital's equipment." (Ex. # 4; *accord* Docket Entry # 34, ¶ 29; Ex. A, ¶ 7).[8] A "Certificate of Destruction" dated November 10, 1986, and signed by defendant Currie similarly requires C & C to destroy the plaintiff's equipment and treat the computer components as scrap material. (Ex. # 1).[9]

In lieu of destroying the plaintiff's computer components, defendants Desmond and Currie sold the plaintiff's computer components to various entities, including The Moore Group, Inc. ("The Moore Group") located in California, according to Shiepe. (Docket Entry # 34, ¶¶ 7, 10–13). In or about late 1984, defendant Desmond formed a separate corporation, Carlyle–Omni, to sell the plaintiff's computer components obtained through defendant Currie and Currie Enterprises. (Docket Entry # 34, ¶¶ 9–11; Ex. A, ¶ 14).

Shiepe personally observed numerous activities of defendants Currie and Desmond involving the sale of the plaintiff's computer components. (Docket Entry # 34, ¶ 10). Oftentimes, upon the arrival of a shipment of the plaintiff's computer components, defendant Desmond telephoned The Moore

---

any, is uncertain and therefore an inappropriate substitute for the escrow funds.

5. Named defendants are as follows: Currie Enterprises, Inc. ("Currie Enterprises"); Raymond B. Currie, owner, officer and Director of Currie Enterprises ("defendant Currie"); Mary J. Currie, defendant Raymond Currie's wife; Gregory S. Currie and R. Paul Currie, defendant Raymond Currie's sons; Carlyle–Omni Industries, Inc. ("Carlyle–Omni"); Carlyle–Omni Realty Investors, Inc. ("Carlyle–Omni Realty"); Edward F. Desmond, Jr., former employee of Currie Enterprises and officer and Director of Carlyle–Omni Realty ("defendant Desmond"); Fred P. Kleinerman, former employee or agent of defendants Desmond or Carlyle–Omni; James M. Terrasi and Stephen P. Beyers, employees, agents or associates of defendants Desmond or Carlyle Omni; Warren K. Haeberle, former Vice President of Electronic Service Specialists, Ltd. ("ESS"); Evan Padilla, former Secretary and Director of The Moore Group, Inc. ("The Moore Group"); John J. Trebendis, former Manager of Digital's property disposal centers in Acton, and Northboro, Ma.; Joseph V. McGee, former Supervisor of Digital's property disposal centers in Acton, and Northboro, Ma. and Contoocook,

N.H.; Louis Buckman, former security guard at Digital's storage facility in Athol, Ma.; Windham Recovery Systems, Inc. ("Windham Systems"); Bradford W. Blakely, Director of Windham Systems; Philip M. Carnovale, President, Treasurer and Clerk of Windham Systems and Dennis M. Palmisciano, Director and former Clerk of Windham Systems. (Docket Entry # 1).

6. The plaintiff does not provide this court with sufficient proof to analyze the plaintiff's reasonable likelihood of success under its Lanham Act claim.

7. The plaintiff's complaint is unverified and therefore fails to provide an adequate basis to support an attachment.

8. Shiepe avers that the allegations made in the counterclaim filed by defendants Desmond and Carlyle–Omni Industries, Inc. in Massachusetts Superior Court (Docket Entry # 34, Ex. A) are true. (Docket Entry # 34, ¶ 29).

9. Defendant Currie's argument regarding the absence of a contract is therefore not determinative.

Group, located in Clarence, California, from C & C offices in Salem, New Hampshire, according to Shiepe. (Docket Entry # 34, ¶ 10). Shiepe further avers that defendants Paul and Greg Currie, located in Massachusetts, frequently telephoned defendant Desmond, located in New Hampshire. (Docket Entry # 34, ¶ 10).

Defendant Desmond generally shipped the plaintiff's computer components to the Moore Group through American Airlines, Flying Tigers Airlines and Federal Express. Currie oftentimes met with American Airlines officials at C & C offices located in New Hampshire. (Docket Entry # 34, ¶¶ 12–13).

In or about 1984, defendant Currie informed defendant Desmond that he was selling the plaintiff's computer components in the secondary market and "that such sales were the most lucrative part of the business of Currie Enterprises." (Docket Entry # 34, Ex. A, ¶ 8). A substantial percentage of funds paid to Carlyle–Omni by the Moore group were paid to defendant Currie, according to Shiepe. (Docket Entry # 34, ¶ 11). From July, 1986, through April, 1990, the Moore Group paid approximately $7,822,225 to Carlyle–Omni or to defendant Desmond's agents. (Docket Entry # 33, ¶ 4).

The Currie defendants' joint tax returns for the years 1984 through 1988 reflect a combined gross income of approximately $7,161,974. (Docket Entry # 33, ¶ 6). The gross receipts of Currie Enterprises for the years 1984 through 1988 amounted to approximately $18,653,839. (Docket Entry # 33, ¶ 5). Although denied by defendant Currie, Shiepe avers that defendant Currie told him that defendant Joseph McGee, a supervisor at the plaintiff's disposal centers in Acton, Northboro, and Athol, Massachusetts, was "on my payroll." (Docket Entry # 34, ¶ 22). Defendant Currie was also in contact with defendant McGee's supervisor, defendant John Trebendis.

(Docket Entry # 34, ¶ 23). Defendant Trebendis denies giving defendant Currie or Currie Enterprises advance notice of his inspections on behalf of the plaintiff. Shiepe, however, avers to the contrary. (Docket Entry # 161, Ex. # 2).

The Currie defendants own a three bedroom house in Brentwood, New Hampshire. In addition to their Brentwood home, defendant Currie testified that he owns seven thoroughbred horses and a number of other properties.

## B. DISCUSSION

The plaintiff alleges that defendant Currie and others violated section 1962(a) of RICO. Section 1962(a) renders civilly liable:

> any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest ... such income ... in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in ... interstate or foreign commerce.

18 U.S.C. § 1962(a).

In order to show a reasonable likelihood of success under section 1962(a), the plaintiff must show each of the following elements: "(1) a person (2) who is a principal (3) in a pattern of racketeering activity (4) who derives income, directly or indirectly, from that activity, (5) and uses or invests any part of that income in an enterprise (6) which constitutes, or is involved in, interstate or foreign commerce." *Hilton Sea, Inc. v. DMR Yachts, Inc.*, 750 F.Supp. 35, 37 (D.Me.1990) (reasonable likelihood of success standard for attachment under Maine law on the basis of violating section 1962(a)); *accord Bhatla v. Resort Development Corporation*, 720 F.Supp. 501, 505 (W.D.Pa.1989) (stating elements of section 1962(a)).[10]

---

10. Although subdivisions (a), (b) and (c) are directed at particular types of conduct, the provisions incorporate common elements of proof. *Medical Inc. v. Angicor Ltd.*, 677 F.Supp. 1000, 1002–1003 (D.Minn.1988). In order to show a

reasonable likelihood of success in a RICO claim, "a plaintiff is always required to prove a pattern of racketeering activity, and the existence of one or more enterprises, the activities of which affect interstate commerce." *Halperin v.*

A "person" is defined in section 1961(3) as "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). It is therefore evident that defendant Currie meets this definition.

■ For purposes of the instant dispute, defendant Currie also meets the definition of a "principle" under 18 U.S.C. § 2. His involvement with Currie Enterprises and with the sales of the plaintiff's computer components evidences that he participated as a principal in the collection of an unlawful debt and the underlying racketeering activity. *See Genty v. Resolution Trust Corporation*, 937 F.2d 899, 907 (3rd Cir. 1991) (discussing definition of principal in the context of section 1962(a)); *see generally*, Arthur Mathews, Andrew B. Weissman and John H. Sturc, *Civil RICO Litigation* § 6.02[B] (1991) (discussing concept of principal under section 1962(a)). Shiepe avers that he "personally observed numerous activities of Raymond Currie ... involving the sale and shipment of components and equipment provided to C & C by Digital." (Docket Entry # 34, ¶ 10). Furthermore, defendant Currie, or entities owned by defendant Currie, received a substantial percentage of funds paid to Carlyle–Omni from the Moore Group. (Docket Entry # 34, ¶ 11).

■ Turning to the phrase "pattern of racketeering activity," the plaintiff must show at least two or more "predicate acts" of racketeering activity within a specific period of time. *Fleet Credit Corporation v. Sion*, 893 F.2d 441, 444 (1st Cir.1990); *see also Lincoln House, Inc. v. Dupre*, 903 F.2d 845, 846 (1st Cir.1990).[11] Section 1961(1) contains a list of racketeering acts, including mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343. *Konstantinakos v. Federal Deposit Insurance Corp.*, 719 F.Supp. 35, 39 (D.Mass.1989). "[A]cts of common law fraud that do not implicate the mails or wires do not constitute 'racketeering activity' under the defini-

*Jasper*, 723 F.Supp. 1091, 1097, n. 4 (E.D.Pa. 1989).

tion found within the RICO statute." *Fleet Credit Corporation v. Sion*, 893 F.2d at 445.

■ To prove a mail or wire fraud violation as delineated in the First Circuit, a plaintiff must show: " '(1) a scheme conceived ... for the purpose of defrauding ... by means of false pretenses, representations or promises and (2) use of the U.S. Mails [or interstate wire communications] in furtherance of that scheme.' " *Halperin v. Berlandi*, 1988 WL 135413 (D.Mass. Nov. 30, 1988) (civil RICO action, quoting *United States v. Brien*, 617 F.2d 299, 307 (1st Cir.), *cert. den.*, 446 U.S. 919, 100 S.Ct. 1854, 64 L.Ed.2d 273 (1980)); *see also McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786, 790–791 (1st Cir 1990) (discussing mail and wire fraud statutes in context of civil RICO action); *see generally*, Brad Brian, Glenn Pomerantz and Stacey Moritz, *Mail Fraud, Wire Fraud, and Securities Fraud as Predicate Acts in Civil RICO*, 155 P.L.I. 59 (1990) (activities of a defendant need only be indictable). The wire fraud statute tracks the language of the mail fraud statute and requires a scheme to defraud and the interstate use of wire communications in furtherance of the scheme. *Belt v. United States*, 868 F.2d 1208, 1211 (11th Cir.1989); *see United States v. Fermin-Castillo*, 829 F.2d 1194, 1198 (1st Cir.1987) (caselaw construing wire fraud may apply to mail fraud as well). The plaintiff need only show that defendant Currie knew or could have reasonably foreseen use of the mails or the interstate wires in furtherance of the scheme or artifice. *United States v. Locklear*, 829 F.2d 1314, 1318 (4th Cir.1987) (citing *Pereira v. United States*, 347 U.S. 1, 8–9, 74 S.Ct. 358, 362–63, 98 L.Ed. 435 (1954)).

■ As averred by Shiepe on information and belief, defendant Currie was the owner and President of C & C. (Docket Entry # 34, ¶ 2). The business of C & C involved the sale of the plaintiff's computer

11. As discussed *infra*, establishing a RICO pattern requires a more stringent pattern requirement than proof of two predicate acts. *Fleet Credit Corporation v. Sion*, 893 F.2d at 444.

components rather than the destruction of such components as required under the Certificate of Destruction. (Docket Entry # 34, ¶¶ 7, 10). Shiepe oftentimes observed defendant Desmond's use of the interstate telephone wires in the sale of the plaintiff's computer components to the Moore Group. It is reasonably likely that defendant Desmond used the interstate wires in furtherance of a scheme to defraud the plaintiff. In the presence of Shiepe, defendants Currie and Desmond discussed the proper allocation of payments from the Moore Group "on at least 50 different occasions." (Docket Entry # 34, ¶ 11). It is therefore likely that defendant Currie reasonably foresaw defendant Desmond's interstate use of the wires in furtherance of the scheme to defraud the plaintiff. Accordingly, defendant Currie's activities fit within the definition of "racketeering activity." 18 U.S.C. § 1961(1).

▬ Defendant Currie's two or more acts of mail or wire fraud must also form a "pattern." Use of the mails or wires form a "pattern" if: (1) the uses are *related* and (2) they amount to, or pose a threat of, *continued* criminal activity. *Fleet Credit Corporation v. Sion*, 893 F.2d at 445 (discussing the distinction between relatedness and continued criminal activity); *accord H.J. Inc. v. Northwestern Bell Telephone Company*, 492 U.S. 229, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989). A plaintiff establishes *relatedness* of the predicate acts by demonstrating that the acts "have the same or similar purposes, results, participants, victims, or methods of commission, or are interrelated by distinguishing characteristics...." *Fleet Credit Corp. v. Sion*, 893 F.2d at 445 (quoting *H.J.*, 109 S.Ct. at 2901; section 1962 does not impose liability for sporadic or isolated activities). It is evident that defendant Currie's acts are related in the sense that they involve

defendant Currie's scheme to defraud the plaintiff by improperly selling the plaintiff's computer components in the secondary market.

A plaintiff may establish *continuity* by using one of two approaches. First, a plaintiff may show " 'continuity over a closed period by proving a series of related predicates extending over a *substantial* [emphasis added] period of time....' " *Id.* at 446 (quoting *H.J.*, 109 S.Ct. at 2902). Alternatively, "a party may establish continuity by demonstrating that the predicate acts, though not continuous, *threaten* to become so." *Id.* at 446. In assessing the longevity of a RICO scheme involving mail or wire fraud, "the duration is measured with respect to the particular defendant's fraudulent activity." *Feinstein v. Resolution Trust Corporation*, 942 F.2d 34, 46 (1st Cir.1991). Analyzed under the first approach, from 1984 through 1988, the high number of predicate acts of interstate wire communications with the Moore Group in furtherance of the scheme to improperly sell the plaintiff's computer components occurred over a substantial period of time. This court therefore finds that the plaintiff has shown a reasonable likelihood of success that defendant Currie engaged in a "pattern of racketeering activity." 18 U.S.C. § 1961(5).

▬ The plaintiff must also show, however, that defendant Currie *nvested* the income that he derived *in an enterprise*. See *Perez–Rubio v. Wyckoff*, 718 F.Supp. 217, 242 (S.D.N.Y.1989). Defendant Currie derived income from the proceeds of the mailings to the Moore Group, as averred by Shiepe (Docket Entry # 34, ¶ 11) and evidenced by defendant Currie's tax returns. (Docket Entry # 33, ¶ 6). It is also likely that Currie Enterprises constitutes an enterprise within the meaning of 18 U.S.C. § 1961(4).[12]

---

**12.** Section 1961(4) defines "enterprise" to include "any individual ... corporation ... or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). *See Feinstein*

*v. Resolution Trust Corporation*, 942 F.2d at 41, n. 7 (discussing enterprise requirement). This court further finds it likely that Currie Enterprises was involved in interstate commerce.

This Court further finds, for purposes of the instant dispute, that defendant Currie invested at least a portion of the income he obtained in the enterprise. In late 1984, at the request of defendant Currie, defendant Desmond set up a separate organization, Carlyle–Omni Industries, Inc. During the first year of operation, Carlyle–Omni operated out of defendant Currie's offices in Salem, New Hampshire. Defendant Desmond telephoned out-of-state customers and shipped the plaintiff's computer components from defendant Currie's warehouses. Monies were received in the name of Carlyle–Omni and 90% of these monies were transferred from Carlyle–Omni to Currie Enterprises. (Docket Entry # 34, ¶¶ 3, 29, Ex. A).

As a final matter, although the plaintiff has shown a likelihood of success as to the above elements, the plaintiff fails, at this stage, to demonstrate the appropriate injury under section 1961(a) in the affidavits submitted in support of the attachment. Section 1962(a) "provides a cause of action arising from the actual use or investment of racketeering income, and not for injuries arising from the underlying racketeering activity." *Eastern Corporate Federal Credit Union v. Peat, Marwick, Mitchell & Co.*, 639 F.Supp. 1532, 1537 (D.Mass. 1986); *accord, Palumbo v. I.M. Simon & Co.*, 701 F.Supp. 1407, 1409–1410 (N.D.Ill. 1988) (citing cases). This issue is therefore reserved for submission of further affidavits on or before February 28, 1992, and, if necessary, oral argument. Pending receipt of such affidavits, the attachment remains in effect.

## II. APPRAISAL OF STERLING STREET PROPERTY

Defendant Currie argues that the Sterling Street property is of sufficient value to satisfy the plaintiff's claim. In support of this argument, defendant Currie submits an appraisal dated August 13, 1991, valuing the Sterling Street property at $3,000,000. (Docket Entry # 103, Ex. 3).

The appraisal, however, fails to include the qualifications of Steven P. Moskowitz, the appraiser.

Defendant Currie purchased the Sterling Street property on or about May 23, 1985, for $1,150,000. (Docket Entry # 116, Ex. B). A 1988 appraisal performed by Mr. Moskowitz values the Sterling Street property at $3,350,000. (Docket Entry # 159, Ex. B). Although it appears as if the property is not encumbered (Docket Entry # 131, ¶ 23), there is little explanation as to how this property could have almost tripled in value, notwithstanding the recent decline in the real estate market. As averred by Douglas Hammond, Manager of Corporate Administration at Digital, the 1988 appraisal overvalues the Sterling Street property. (Docket Entry # 159).

Mr. Moskowitz also appraised the value of the Green Street property in 1988 at $3,565,000. (Docket Entry # 159, Ex. A). In October, 1991, defendant Currie sold the Green Street property to Weetabix for $1,900,000. This discrepancy lends further support to the conclusion that Mr. Moskowitz's 1991 appraisal of the Sterling Street property is overvalued. It is therefore inappropriate to release the escrow funds at this time, notwithstanding defendant Currie's alleged financial constraints.

## III. LACK OF BASIS FOR AMOUNT OF DAMAGES SOUGHT

Defendant Currie contends that the plaintiff fails to provide this court with an adequate basis for the amount of the $3,000,000 attachment in light of the lack of specificity as to the damages claimed in the plaintiff's unverified complaint. As required by Rule 4.1(h), a plaintiff must set forth specific facts in support of an attachment. Mass.R.Civ.P. 4.1(h). This requirement includes proof of a reasonable likelihood that a plaintiff will recover a judgment in an amount equal to or greater than the amount of the attachment.

From 1984 through 1988, Currie Enterprises generated gross receipts of approximately $18,653,839. Defendant Currie also reported a combined gross income of approximately $7,161,974 during this period.

(Docket Entry # 33). Because of the reasonable likelihood of success that defendant Currie engaged in conduct in violation of section 1962(a) as discussed *supra,* it is likely that a substantial portion of the income generated by Currie Enterprises and reported by defendant Currie resulted from sales of the plaintiff's computer components. The plaintiff is entitled to recover triple damages and costs for injuries sustained to its business or property by reason of defendant Currie's violation of section 1962(a). 18 U.S.C. § 1964(c). Given the amount of income generated to Currie Enterprises and the resulting loss of business to the plaintiff, this court finds the $3,000,-000 amount reasonable and not excessive under section 114 of Massachusetts General Laws chapter 223.

## IV. DUE PROCESS

[11] Defendant Currie finally maintains that Massachusetts prejudgment attachment law is inconsistent with due process requirements in light of *Connecticut v. Doehr,* —— U.S. ——, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991).[13] In particular, defendant Currie argues that the standard of reasonable likelihood of success is vague and that state law fails to require a bond or a balancing of the harms that may result from prejudgment attachment. (Docket Entry # 162).

Rule 4.1(c) provides for an attachment upon a showing "that there is a reasonable likelihood that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the amount of the attachment over and above any liability insurance shown by the defendant to be available to satisfy the judgment." Mass.R.Civ.P. 4.1(c). The "reasonable likelihood of success" language is, however, neither vague nor uncertain particularly in light of case law construing this language. Massachusetts law, however,

does not require the plaintiff to post a bond. The state procedure also fails to require a balancing of the harms.

This court, however, finds that the Massachusetts procedure is not unconstitutional under *Doehr* either facially or as applied. Unlike the Connecticut statute at issue in *Doehr,* Rule 4.1 requires a finding of one of three exigent circumstances enumerated in Rule 4.1(f) prior to issuance of an *ex parte* attachment. The *Doehr* Court recognized that such an exigent circumstance permits postponing notice or hearing until after attachment.

> ... there was no allegation that Doehr was about to transfer or encumber his real estate or take any other action during the pendency of the action that would render his real estate unavailable to satisfy a judgment. Our cases have recognized such a properly supported claim would be an exigent circumstance permitting postponing any notice or hearing until after the attachment is effected.

As to the requirement of a bond, four justices in *Doehr* stated that the lack of a requirement that a plaintiff post a bond to secure an *ex parte* attachment violated defendant's due process rights. The majority, however, did not reach this issue. *See Darrah–Wantz v. Brown,* 138 F.R.D. 20 (D.Conn.1991) (distinguishing *Doehr,* the court allowed attachment and denied bond).

In addition, although the Massachusetts procedure fails to require a balancing of the harms, the procedure nevertheless satisfies due process. The procedure affords a number of safeguards that diminish the risk of an erroneous deprivation including a showing of reasonable likelihood of success, a post deprivation hearing after *ex parte* attachment, and a showing of exigent circumstances prior to *ex parte* attachment. *See Reardon v. United States,* 947 F.2d 1509, 1518 (1st Cir.1991) (discuss-

**13.** In *Doehr,* the Court stated that determining what process is due in the case before it:

> requires (1) consideration of the private interest that will be affected by the prejudgment measure; (2) an examination of the risk of erroneous deprivation through the procedures under attack and the probable value of addi-

> tional or alternative safeguards; and (3) principal attention to the interest of the party seeking the prejudgment remedy, with due regard for any ancillary interest of the government may have in providing the procedure.

*Doehr,* 111 S.Ct. at 2107.

ing due process analysis and *Doehr* ); *United States v. Two Parcels of Property,* 774 F.Supp. 87, 89 (D.Conn.1991) (discussing *Doehr* ).

 Moreover, in this case defendant Currie received more than adequate due process. Defendant Currie received notice of the July 25, 1991, hearing. (Docket Entry # 61). On July 24, 1991, one day prior to the hearing, defendant Currie filed a second motion seeking postponement of the July 25, 1991, hearing. (Docket Entry # 67). Nevertheless, defendant Currie attended the hearing without counsel. On August 6, 1991, this court allowed the attachment and, on August 22, 1991, approved the writs of attachment. (Docket Entry # 109). As detailed *supra,* defendant Currie sought a reconsideration of the attachment and obtained a hearing before the district judge on September 20, 1991. (Docket Entry # 138). In accordance with the terms of the stipulation, the Green Street property was sold and the funds placed in escrow.

More importantly, on December 17, 1991, this court held a hearing on defendant Currie's second motion to modify the order of attachment. (Docket Entry # 158). Defendant Currie availed himself of the opportunity to be heard and testified at length. After careful consideration of the testimony, exhibits and review of the affidavits submitted by counsel, this court determines that the attachment is proper and that a bond is unnecessary as is an analysis of the balancing of the harms. The process afforded defendant Currie addresses the concerns raised in *Doehr* and satisfies due process. The attachment shall therefore remain in effect pending additional submissions on the issue of injury under section 1962(a).

## CONCLUSION

In accordance with the above discussion, the Currie defendants' motions to modify this court's order of attachment are DE-

NIED. (Docket Entry ## 103, 158). As to the issue of injury under 18 U.S.C. § 1962(a), the parties are directed to submit additional affidavits on or before February 28, 1992, in the event that they cannot reach an agreement regarding this matter.