**HASBRO, INC., Plaintiff,**

v.

**George SERAFINO, Joseph Gulluni, Arthur Peckham, ABC Janitorial Service, Inc. and Hampden Battery Service, Inc., Defendants.**

**Civil Action No. 95–30062–MAP.**

United States District Court,
D. Massachusetts.

Feb. 25, 1997.

Anthony Mirenda, Arthur G. Telegen, Nicholas C. Theodorou, Jeffrey M. Hahn, Amy B.G. Katz, Foley, Hoag & Eliot, Boston, MA, for Hasbro, Inc.

Morris M. Goldings, Ellen S. Shapiro, Mahoney, Hawkes & Goldings, Boston, MA, for George Serafino, ABC Janitorial Service, Inc. and Hampden Battery Service, Inc.

Bradford R. Martin, Jr., Timothy J. Ryan, Charles V. Ryan, Ryan, Martin, Costello, Allison & Leiter, Springfield, MA, for Joseph Gulluni.

Steven W. Leary, Springfield, MA, for Arthur Peckham.

David G. Cohen, Egan, Flanagan & Egan, Springfield, MA, Charles S. Cohen, Egan, Flanagan & Cohen, PC, Springfield, MA, for George R. Ditomassi, Jr.

PONSOR, District Judge.

Upon *de novo* review, and without opposition, the Report and Recommendation is hereby adopted. The motion for preliminary injunction and attachment are hereby ALLOWED, in part, as set forth at p.27 of the Report and Recommendation.

So ordered.

*REPORT AND RECOMMENDATION WITH REGARD TO PLAINTIFF'S MOTION FOR PRE–JUDGMENT ATTACHMENT AGAINST DEFENDANTS SERAFINO AND GULLUNI AND FOR PRELIMINARY INJUNCTION AGAINST DEFENDANTS PECKHAM AND GULLUNI*

(Docket No. 77).

January 9, 1997

NEIMAN, United States Magistrate Judge.

Plaintiff Hasbro, Inc. ("Hasbro") has moved for the following pre-judgment securi-

ty: (1) a $1.2 million writ of attachment against all real property owned by Defendant George Serafino ("Serafino"), specifically including, without limitation, certain real property located at 32 Deerfield Avenue in Longmeadow, Massachusetts; (2) a $1.2 million writ of attachment against all real property owned by Defendant Joseph Gulluni ("Gulluni"), specifically including, without limitation, certain real property located at 6 Arrowhead Drive in Dennis, Massachusetts; (3) a preliminary injunction against Defendant Arthur Peckham ("Peckham") ordering him not to encumber, sell, or transfer either a Sportcraft boat named the "Three D," number 933824, or certain real property located at 10 Wheatfield Cove Road in Narragansett, Rhode Island; and (4) a preliminary injunction against Gulluni ordering him not to encumber, sell or transfer, certain real property located at 12 Huntington Drive in Somers, Connecticut. Hasbro's motion has been referred to the Court for a report and recommendation pursuant to Rule 3 of the Rules of United States Magistrates of the United States District Court for the District of Massachusetts. See 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the Court recommends that Hasbro's motion be allowed in part.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

The Court will not detail all of the allegations and counter-allegations in this lawsuit, many of which have been described in prior rulings. (See, e.g., Mem. and Order With Regard to a Number of Pre-trial Disc. Motions (Docket No. 123); Mem. and Order With Regard to Def. Gulluni's Mot. to Compel Production of Docs. Pursuant to Dep. Subpoena and Pl. Hasbro's Mot. to Strike (Docket No. 75).) In essence, Hasbro asserts that Serafino, Gulluni and Peckham, together with Defendants ABC Janitorial Service, Inc. ("ABC") and Hampden Battery Service, Inc. ("Hampden"), conspired to receive kickbacks and payments in relation to

services performed by Hasbro's vendors. Gulluni was Hasbro's executive vice-president of manufacturing, Peckham was senior vice-president of engineering and Serafino directed the vehicle mechanics and ground keepers. Throughout the period relevant to this action, Serafino owned ABC and Hampden which, respectively, provided cleaning services and battery reconditioning services to Hasbro.

## STANDARDS

■ Hasbro first seeks pre-judgment attachments against Serafino and Gulluni. Fed.R.Civ.P. 64, which governs this procedure, makes available to this Court the prejudgment remedies available to litigants in the courts of the forum state, here, Massachusetts, "under the circumstances and in the manner provided by the law of" Massachusetts, here, Mass. R. Civ. P. 4.1. In turn, Mass. R. Civ. P. 4.1(c) provides that, in order for an order of attachment to be approved, the Court must find "a reasonable likelihood that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the amount of the attachment over and above any liability insurance shown by the Defendant to be available to satisfy the judgment." Cf. M.G.L. ch. 223, § 42A ("no attachment ... shall be made for a larger sum than the amount of the claim and such additional amount as is reasonably necessary to include interest thereon and costs likely to be taxed in the action"). " '[T]he central question on the motion for approval of attachment is whether plaintiffs are likely to prevail on the merits and obtain damages in the necessary amount.' " *Digital Equipment Corp. v. Currie Enterprises*, 142 F.R.D. 16, 20 (D.Mass. 1992) (quoting *Anderson Foreign Motors, Inc. v. New England Toyota Distributor, Inc.*, 475 F.Supp. 973, 978 (D.Mass.1979)).

■ Hasbro also seeks injunctive relief, pursuant to Fed.R.Civ.P. 65, with respect to both personal and real property owned by

---

**1.** The Court, without opposition by the parties, has chosen to treat both aspects of Hasbro's motion, i.e., that part seeking preliminary injunctions and that part seeking writs of attachment, in this report and recommendation, pursuant to

28 U.S.C. § 636(b)(1), even though that part of the motion which seeks writs of attachment could be ruled on by the Court directly. See Rule 3(a)(A) of the Rules for United States Magistrates.

Gulluni or Peckham outside Massachusetts, as to which attachment procedures would be ineffective. *EBSCO Industries, Inc. v. Lilly*, 840 F.2d 333, 336 (6th Cir.1988) (injunction properly granted where Ohio attachment statute did not apply to assets located outside the state). Usually, a preliminary injunction pursuant to Fed.R.Civ.P. 65 is granted under different standards than a writ of attachment. Thus, when seeking an injunction, a plaintiff must typically demonstrate not only a reasonable likelihood of success on the merits of the claim, as in attachment proceedings, but a court must also evaluate (1) the potential that the plaintiff will suffer irreparable harm if the injunction is not granted; (2) whether the defendant will suffer greater harm from the grant of the injunction; and (3) how the injunction would serve or disserve the public interest. See *Weaver v. Henderson*, 984 F.2d 11, 12 (1st Cir.1993); *Narragansett Indian Tribe v. Guilbert*, 934 F.2d 4, 5 (1st Cir.1991); *Planned Parenthood League of Mass. v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir.1981).

▮ Here, however, Hasbro's request for a preliminary injunction is in the nature of an equitable attachment. As a result, the Court need not require a "strong showing of irreparable injury or a favorable balance of harms," see *Anderson Foreign Motors*, 475 F.Supp. at 978–79. In such instances, the preliminary injunction standard is virtually identical to the attachment standards noted above. Indeed, the Eleventh Circuit recently applied Rule 64 attachment standards, not Rule 65 injunction standards, when evaluating a request for injunctive relief that was, as here, no more than a request for prejudgment attachment. See *Mitsubishi Intern. Corp. v. Cardinal Textile Sales, Inc.*, 14 F.3d 1507, 1521–22 (11th Cir.1994). But see *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186 (3rd Cir.1990) (applying Rule 65 rather than

Rule 64 standards). Accordingly, pursuant to Rule 64, the Court looks primarily to Massachusetts attachment standards.[2]

## DISCUSSION

### A. Peckham

▮ The Court's recommendation with respect to Peckham comes relatively easy, for he has not filed an opposition to Hasbro's motion.[3] Hasbro has set forth sufficient information to indicate that it is likely to prevail on one or more of its claims against Peckham. Beginning at least in December of 1987 and continuing into 1991, Serafino wrote approximately sixty-three checks to Peckham from ABC and Hampden's accounts. In addition, Serafino wrote a $2,200 check from ABC to Peckham's daughter and a $7,000 check from Hampden to Peckham's son. Altogether, ABC and Hampden paid Peckham and his family about $176,000, even though no apparent legitimate business relationships existed between them. There is no explanation for these payments other than some ill-gotten gain—most likely at Hasbro's expense. Accordingly, the Court will recommend that a preliminary injunction against Peckham be issued in accord with Hasbro's motion, but not its proposed order. Hasbro has not identified the other property which it would otherwise target.

### B. Gulluni

▮ As for Gulluni, the Court first notes that there is sufficient evidence that Hasbro has a likelihood of success against Gulluni with respect to its claim of breach of fiduciary duty. Gulluni as much as admits that $24,386.57 had been paid in 1991 by Gentile Construction, a Hasbro vendor, to other contractors for work done at Gulluni's home. (See Gulluni's Opp'n to Pl.'s Mot. for Real

---

**2.** For at least two other reasons, the variance in the two standards need not be addressed in detail in the present matter. First, Peckham has in effect conceded the viability if not the scope of the injunction sought against him. Second, the Court finds it unnecessary to issue a preliminary injunction against Gulluni since the *attachment* of his property *within* Massachusetts is sufficient. See discussion, *infra*.

**3.** The only objection Peckham raised was at oral argument concerning the scope of the injunction. Peckham's counsel argued that the motion itself, to which he did not object, was narrower than the preliminary injunction actually proposed by Hasbro which would not only bar the sale of the boat and real estate in Rhode Island, specifically mentioned in the motion, but any other boat or real estate owned by Peckham and located outside the Commonwealth of Massachusetts.

Estate Attach. and Prelim. Inj. (Docket No. 113) at 3–4.)[4] Other evidence, however, from which Hasbro attempts to draw significant inferences of Gulluni's involvement in a civil RICO conspiracy, is lacking.

■ In order to show reasonable likelihood of success under the civil RICO statute, 18 U.S.C. § 1961 et seq., Hasbro "must show each of the following elements: '(1) a person (2) who is a principal (3) in a pattern of racketeering activity [5] (4) who derives income, directly or indirectly, from the activity, (5) and uses or invests any part of· that income in an enterprise (6) which constitutes, or is involved in, interstate or foreign commerce.'" Digital Equipment, 142 F.R.D. at 16 (quoting Hilton Sea, Inc. v. DMR Yachts, Inc., 750 F.Supp. 35, 37 (D.Me.1990)). Hasbro's allegations against Gulluni, however, contain none of the specifics which have been offered against Peckham, and, try as it might, Hasbro has not yet adequately tied Gulluni to the various RICO machinations it more specifically alleges against Serafino. See discussion, infra.

At best, Hasbro alleges that Gulluni's girlfriend, later his wife, Jennifer Dodge ("Dodge"), was employed by Serafino's company, ABC, as a secretary. Hasbro claims that this was a "no-show" job paid for with funds from ABC's "no-bid" contract with Hasbro, that Dodge did not provide ABC with "legitimate" secretarial services—arguing that Serafino himself testified that Dodge merely typed ABC's annual contract, a one-page invoice, and one or two letters a month and placed an occasional poster in a supermarket window—and that, when Dodge left ABC, Serafino's daughter performed the occasional typing job at no salary. In response, Gulluni asserts that Dodge was paid a standard weekly sum of $150, did not consult with Gulluni when she took the position

with ABC, was not married to Gulluni when she took the job or for several years thereafter, in fact handled paperwork relating to ABC and was paid modest and reasonable wages for a part-time job. Given these obvious factual disputes, the Court cannot make the leap urged on it by Hasbro—that Gulluni himself was using ABC to provide Dodge with a no-show job, which in turn was allegedly paid for with funds from ABC's contract with Hasbro, which in turn was funded by overcharged services or vendor payoffs. In short, Hasbro has not borne its burden of proof with respect to the Dodge allegations.

The other allegations against Gulluni, although serious, are nevertheless tied to Serafino by only the barest of threads. For example, Hasbro attempts to tie Gulluni to assertedly inflated and fictitious billing by ABC and Hampden, together with the asserted use of unlawful kickbacks and payoffs received from Hasbro's vendors, from the mere fact that Gulluni and Serafino, despite their disparity in rank, met every morning for coffee, monthly for dinner and at least once on vacation in Antigua. Because Gulluni is not directly implicated, however, Hasbro cannot show that Gulluni either engaged in a pattern of racketeering activity, directly or indirectly derived income from those activities or used such income in an enterprise. Compare Digital Equipment, supra.

■ Nonetheless, in light of these allegations, slim as they are, Hasbro wishes the Court to draw adverse inferences from Gulluni's invocation of his Fifth Amendment privilege in assertedly refusing to produce any documents or answer any interrogatories relating to (1) money paid to, or goods received by, him from Hasbro's vendors, (2) any arrangement whereby a vendor obtained or maintained its business relationship with

---

4. Gulluni argues that these payments are not unlike the services and contributions received by George Ditomassi ("Ditomassi"), another Hasbro executive. Indeed, it is evidently undisputed by Hasbro that Ditomassi received over $30,000 of personal services from Hasbro employees on company time and that Hasbro, through the use of its employees and the purchase of goods and services with its funds, contributed to the construction of Ditomassi's residence in East Longmeadow, Massachusetts in amounts in excess of

another $50,000. The similarities between Gulluni and Ditomassi, however, do not lessen the likelihood that Gulluni himself violated his fiduciary responsibility to Hasbro.

5. A pattern of racketeering activity requires at least two or more predicate acts. Fleet Credit Corp. v. Sion, 893 F.2d 441, 444 (1st Cir.1990); Lincoln House, Inc. v. Dupre, 903 F.2d 845, 846 (1st Cir.1990).

Hasbro in exchange for payments to Gulluni, (3) the identification of sources of his income since 1987, and (4) his personal financial and bank records. While adverse inferences certainly can be drawn against a defendant who invokes the Fifth Amendment, those inferences should be drawn only in the face of other probative evidence. *Baxter v. Palmigiano*, 425 U.S. 308, 318–19, 96 S.Ct. 1551, 1557–58, 47 L.Ed.2d 810 (1976). See also *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 391 (7th Cir.1995) ("although inferences based on the assertion of the privilege are permissible, the entry of judgment based only on the invocation of the privilege and 'without regard to the other evidence' exceeds constitutional bounds") (quoting *Baxter*, 425 U.S. at 318, 96 S.Ct. at 1557–58).

Here, the Court believes, the underlying probative evidence is simply too weak from which to draw any sufficiently supportive inferences of Hasbro's likely success on the merits of its RICO claims against Gulluni. Accordingly, the Court only recommends that a writ of attachment against Gulluni should be ordered against his real estate located at 6 Arrowhead Drive in Dennis, Massachusetts in the amount of $50,000, representing claims arising out of his breach of fiduciary duty. In all other respects, the Court recommends that Hasbro's motion against Gulluni be denied.[6]

## C. Serafino

█ Hasbro has succeeded in demonstrating a probability of success on the merits of its claims against Serafino. First, as indicated, Serafino's companies, ABC and Hampden, paid Peckham and his family about $176,000, even though no apparent business interests existed between them. In this regard, Serafino invoked his Fifth Amendment right to refuse to answer why he made any of the documented payments. Second, Serafino apparently admitted that Hasbro was essentially ABC and Hampden's only customer for the period of time at issue (1988–1993), yet together ABC and Hampden took in $570,000 above what they received from Hasbro directly. Again, Serafino invoked his Fifth Amendment rights and refused to explain the origins of these funds. Finally, the source of funds becomes evident, at least in part, from depositions of representatives of Edaron, Inc. ("Edaron"), a puzzle manufacturer with an ongoing business relationship with Hasbro. Edaron's bank records document payments to Serafino, Peckham, ABC and Hampden, although its executives invoked Fifth Amendment privileges when asked questions regarding the reason such payments were made and whether either Serafino, ABC, Hampden or Peckham performed any services in return.

Given the above probative evidence, the Court, unlike with Gulluni, can draw adverse inferences against Serafino. As a result, the Court has at least some explanation as to the origin of funds going to ABC and Hampden from sources other than their only customer, Hasbro. In short, it appears that as much as $570,000 was flowing from Edaron and/or other entities doing business with Hasbro to either Serafino and his companies, with money then going to Peckham, or to Peckham directly. Serafino himself has not accounted for or explained the source of these monies.[7]

6. Gulluni also argues that, to the extent Hasbro seeks injunctive relief based upon its civil RICO claims, such relief is not available. At most, the First Circuit, citing the primary case on which Gulluni relies, *Religious Technology Center v. Wollersheim*, 796 F.2d 1076, 1080–89 (9th Cir. 1986), acknowledged that "it is not clear whether injunctive or other equitable relief is available at all in private civil RICO actions." *Lincoln House*, 903 F.2d at 848 (citing also *In re Fredeman Litigation*, 843 F.2d 821, 830 (5th Cir.1988); *Trane Co. v. O'Connor Securities*, 718 F.2d 26, 28 (2d Cir.1983); *Dan River, Inc. v. Icahn*, 701 F.2d 278, 290 (4th Cir.1983); *Northeast Women's Center, Inc. v. McMonagle*, 868 F.2d 1342, 1355 (3rd Cir.1989)). However, since the facts before it were such as to preclude injunctive relief in the case before it, the First Circuit did not decide whether a court could generally grant equitable relief in RICO cases. See *id.* Thus, the First Circuit simply assumed the availability of such relief for purposes of discussion, not, as Hasbro implies, as a final holding. (Compare *id.* with Hasbro's Reply Mem. Regarding Pre-judgment Security Against Def. Gulluni (Docket No. 122) at 8.) In any case, for the reasons stated, the Court does not believe that injunctive relief is necessary against Gulluni with respect to any property outside Massachusetts.

7. The Court refuses to accept, for purposes here, Hasbro's additional claim that ABC and Hampden sent inflated and fictitious bills to Hasbro

Something was rotten in the state of Hasbro, although the extent of the rot is uncertain. Serafino thus argues with some merit that, despite the stink, Hasbro has not demonstrated to what extent it has in fact been damaged. Indeed, it is unclear to the Court just what part of the $570,000—which the Court infers represents vendor payoffs in one form or another—was in fact passed on to Hasbro in fictitious charges. Nevertheless, in the Court's view, Serafino cannot object to the accuracy of the calculations, on the one hand, and have the Court ignore, on the other hand, the inferences which can be drawn from his refusal to answer certain pointed questions posed by Hasbro. The adverse inferences the Court in fact draws from Serafino's invocation of the Fifth Amendment add credence to its conclusion that Hasbro itself has likely been harmed. Thus, Hasbro has demonstrated to the satisfaction of the Court that the amount of that harm and, in turn, the attachment should be $570,000. This amount appears to be well in excess of the value of the property Hasbro seeks to encumber, 32 Deerfield Avenue in Longmeadow, as acknowledged by Serafino's counsel at oral argument.[8]

Notwithstanding this recommendation, the Court is concerned about another representation made by Serafino's counsel at oral argument, namely, that Serafino's home on Deerfield Avenue is on the market, impliedly to help pay his attorney's fees. Of course, were Hasbro seeking a preliminary injunction, rather than an attachment, with respect to Serafino's real estate, see discussion, *supra*, the Court would be required, in part, to measure whether Serafino would suffer greater harm were the injunction granted than Hasbro were it denied. In addition, the Court would need to consider the public's interest which could entail, in the interests of justice, Serafino's need to be represented by counsel. In this regard, some courts have in fact allowed modifications of preliminary injunctions in order to permit defendants to pay their attorneys. See *Mitsubishi International Corporation*, 14 F.3d at 1514; *Levi Strauss & Co. v. Sunrise Intern. Trading, Inc.*, 51 F.3d 982, 988 n. 6 (11th Cir.1995).

■ Concededly, a writ of attachment, unlike a standard preliminary injunction, need not itself be related to property which underlies the cause of action. Rather, it is designed simply to ensure that a likely judgment be satisfied. Thus, Mass. R. Civ. P. 4.1 "contains no limitation, express or implied, as to the type of action in which attachment may be ordered." *Anderson Foreign Motors, Inc. v. New England Toyota Distributor, Inc.* 492 F.Supp. 1383, 1389 (D.Mass. 1980). It is one thing, however, when an attachment protects a plaintiff's interest, but hardly burdens a defendant's day-to-day needs. It is quite another when an attachment acts to freeze a defendant's assets to which access is otherwise necessary—for attorney fees, for example—particularly when those assets are unrelated to the underlying suit.

■ The Court need not resolve the question at this time because Serafino has not requested that any portion of his assets be exempt from attachment for any purpose. Were he to make that request at some future point, it may well be appropriate for the Court to look beyond the terminology utilized—attachment—to the actual nature of

---

which, controlled by the individually named defendants, then paid them. With respect to Hampden, Hasbro asserts specifically that Serafino charged Hasbro $210,000 for battery reconditioning services performed between 1988 and 1983, but that Serafino could not have provided that level of service given the fact that he put in at least sixty hours per week as a Hasbro employee and that Hampden had no other permanent employees. Hasbro argues that it is reasonable to infer that at least one-half of these charges were inflated. Hasbro bases its calculation on the fact that, when cleaning services previously provided by ABC were put out to competitive bid in 1994, the successful bid was approximately

fifty percent less than the amounts previously charged by ABC. Since it had paid ABC over $1.1 million in calendar years 1988 through 1993, Hasbro asserts that it sustained over $550,-000 in overcharges. Depsite Hasbro's analysis, the Court believes that the inferences are too speculative with respect to both ABC or Hampden for purposes of attachment.

8. Although Hasbro seeks the attachment of *all* real property owned by Serafino, it has not provided any information, as otherwise required by Mass. R. Civ. P. 4.1, of the identity or value of that property.

the relief requested. Cf. *Teradyne, Inc. v. Mostek Corp.* 797 F.2d 43, 46–47 (1st Cir. 1986); *Unisys Corp. v. Dataware Products, Inc.,* 848 F.2d 311, 314 (1st Cir.1988); *Lechman v. Ashkenazy Enter., Inc.,* 712 F.2d 327, 329–30 (7th Cir.1983). See also *Mitsubishi International,* 14 F.3d at 1521 ("When faced with motions appearing to call for an attachment but labeled something else, federal courts again look past the terminology to the actual nature of the relief requested.") *Ashland Oil, Inc. v. Gleave,* 540 F.Supp. 81, 83 (W.D.N.Y.1982) ("It is plain that attachment is the relief sought by plaintiff notwithstanding its labeling as a preliminary injunction; moreover, were it not simply improperly labeled it would be no less necessary to treat plaintiff's motion as one for attachment because the preliminary injunction would be equivalent to the attachment order and less subject to state law under Rule 64's last sentence."). As District Court Judge W. Arthur Garrity, Jr., once noted, "The propriety of attachments depends on the attendant circumstances, including the apparent strength of the plaintiff['s] case and the location, current use, valuation and current interests in property sought to be attached." *Anderson Foreign Motors, Inc.,* 492 F.Supp. at 1390.

## CONCLUSION

For the above reasons, the Court recommends that Hasbro's motion be ALLOWED as follows:

(1) that a writ of attachment against Serafino in the amount of $570,000 be granted with respect to his real estate at 32 Deerfield Avenue, Longmeadow, Massachusetts;

(2) that a writ of attachment against Gulluni in the amount of $50,000 be granted,

with respect to his real property at 6 Arrowhead Drive, Dennis, Massachusetts; and

(3) that a preliminary injunction be granted barring Peckham from encumbering, selling or transferring his Sportcraft boat, number 933824, or certain real estate at 10 Wheatfield Cove, Narragansett, Rhode Island;

but otherwise DENIED.[9]

Date: January 9, 1997.

9. The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court within ten (10) days of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of

Appeals of the District Court order entered pursuant to this Report and Recommendation. See *Keating v. Secretary of Health and Human Services,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); and *Park Motor Mart v. Ford Motor Co.,* 616 F.2d 603, 604 (1st Cir.1980). See also *Thomas v. Arn,* 474 U.S. 140, 154–55, 106 S.Ct. 466, 474–75, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.