**UNITED STATES of America, Plaintiff,**

v.

**David P. POULIN and Mattapoisett Pharmacy, Inc. d/b/a Marion Pharmacy and Mattapoisett Pharmacy, Defendants.**

**Civil A. No. 93–12265–REK.**

United States District Court, D. Massachusetts.

April 19, 1996.

John J. Falvey, Jr., David Abelman, Sara M. Bloom, United States Attorney's Office, Boston, MA, Julie S. Schrager, Assistant U.S. Attorney, Boston, MA, for U.S.

William H. Kettlewell, Boston, MA, for David P. Poulin, Mattapoisett Pharmacy, Inc.; dba Marion Pharmacy, dba Mattapoisett Pharmacy.

### Memorandum and Order

KEETON, District Judge.

## I.

This is a civil action brought by the United States against David P. Poulin and Mattapoisett Pharmacy, Inc., for violations of the Comprehensive Drug Abuse Prevention and Control Act of 1970 ("Controlled Substances Act"), 21 U.S.C. § 801 *et seq.* The court held a nonjury trial on January 12, 1996. This document records the court's findings of fact, conclusions of law, and explanation of the court's decision.

## II.   Findings of Basic Facts

1.  David Poulin is the sole owner and proprietor of the Mattapoisett Pharmacy, located at 76 County Road, Mattapoisett, Massachusetts, and the Marion Pharmacy, located at 148 Front Street, Marion, Massachusetts. Mattapoisett Pharmacy and Marion Pharmacy are both owned by Mattapoisett Pharmacy, Inc., of which David Poulin is the sole stockholder.

2.  In the summer of 1993, a total of four thousand six hundred two (4602) dosage units of Schedule II drugs with high abuse potential disappeared from the two pharmacies.[1] Three thousand three hundred (3,300) dosage units of eighteen different Schedule II drugs, including Codeine, Morphine, Methadone, Roxicet, Percodan, Percocet, Dilaudid, Demoral, Dexedrine, Dolphine, MS Contin, Nembutal, Oxycodone, Opium, Seconal, Tuinal, Tylox, and Secobarbital, disappeared from the Mattapoisett Pharmacy sometime before July 30, 1993. Nine hundred fifty-one (951) dosage units of Roxicet, a Schedule II drug, disappeared from the Marion Pharmacy before July 30, 1993. An additional three hundred fifty-one (351) dosage units of Roxicet disappeared from the Marion Pharmacy between July 30, 1993 and September 5, 1993.

3.  In August and September of 1993, DEA Investigator Harold B. Mosher, Massachusetts State Trooper Thomas Summers, and Inspector Charles Young from the Massachusetts Board of Registration of Pharmacy conducted an investigation at the two pharmacies.

4.  DEA Investigator Mosher found that most of the drugs reported stolen were Schedule II controlled substances that had been kept in an unmarked paper bag in an unlocked wooden cabinet in the dispensing area. Mr. Poulin told DEA Investigator Mosher and testified at trial that he used the paper bag to store out of date drugs, and most of the drugs in the bag may have been there since they were acquired from the Sassaquin Pharmacy in 1989.

5.  During the inspections, DEA Investigator Mosher reviewed the pharmacies' DEA 222 Order Forms, which are required to be used for all orders of Schedule II controlled substances and to record the amount of drugs actually received by the purchaser and the date of their receipt. DEA Investigator Mosher found a total of nine defective order forms. At the Marion Pharmacy, he found seven forms that were defective because they

---

1.  21 U.S.C. § 812 ranks drugs on five schedules based on their potential for abuse and medical applications. Schedule I drugs, not carried by the pharmacies in this case, have no accepted medical application and a high potential for abuse. Schedule II drugs have a high potential for abuse, and may lead to severe psychological or physical dependence, but also have accepted medical applications with severe restrictions. Drugs listed on Schedules III, IV, and V have decreasing levels of potential for abuse and risk of physical or psychological dependence from abuse. 21 U.S.C. § 812.

did not contain the number of controlled substances received or the date received. At the Mattapoisett Pharmacy, he found two defective DEA Form 222s, one of which was unsigned and one of which was signed by a pharmacist for whom no power of attorney was available on that date.

6. At each pharmacy, DEA Investigator Mosher asked to see the pharmacy's "power of attorney" forms on file. These were not produced at either pharmacy at the time of the inspections.

7. At each pharmacy, DEA Investigator Mosher then asked to see a copy of the pharmacy's biennial inventory. The mandated inventory could not be produced at either pharmacy at the time of the inspections.

8. DEA Investigator Mosher reviewed the pharmacies' Schedule II prescription files and found that, in violation of the Controlled Substances Act, five prescriptions had been filled even though the physician had not placed the patient's address on the prescription and one was undated and not signed or initialed by a pharmacist.

9. The investigators located, on the shelf of the Mattapoisett Pharmacy, Cocaine HCL powder, a Schedule II drug, that had not been documented as having been received or as being within the pharmacy's inventory.

10. David Poulin ran both the Marion and Mattapoisett pharmacies. He made hiring and firing decisions for the pharmacies. He assigned tasks to employees at both pharmacies. He is a licensed pharmacist and worked as a pharmacist in both pharmacies and was involved in the day to day operations of both pharmacies. He had ultimate responsibility for proper recordkeeping for both pharmacies.

11. Defendant Mattapoisett Pharmacy, Inc. is a corporation created by Mr. Poulin on the advice of his accountant for tax purposes. Mr. Poulin is the President, Treasurer and sole owner of Mattapoisett Pharmacy, Inc. His wife, Judith Poulin is the clerk. Mr. and Mrs. Poulin are and have always been the sole officers and directors of Mattapoisett Pharmacy, Inc.

12. The only corporate records of Mattapoisett Pharmacy, Inc., other than its tax returns, are its filings with the Secretary of State for the years 1989 through 1994. There are no minutes of any meeting. Mattapoisett Pharmacy, Inc. has been in existence since 1973.

13. Mr. Poulin has stated that he personally lent money to the Mattapoisett Pharmacy, Inc., but no note or other loan documents were ever created.

14. The buildings in which Mattapoisett Pharmacy Inc. operates are leased from Mr. and Mrs. Poulin individually. No formal leases exist. Mattapoisett Pharmacy has always operated in buildings owned by Mr. and Mrs. Poulin and has paid rent to the Poulins for those buildings.

## III. Legal Issues and Conclusions

### A. Strict Liability for Recordkeeping Violations

The Controlled Substances Act, 21 U.S.C. § 801 et seq., focuses on recordkeeping, in "an attempt to regulate closely the distribution of certain substances determined by Congress to pose dangers, if freely available, to the public at large." United States v. Averi, 715 F.Supp. 1508, 1510 (M.D.Ala. 1989). The Act imposes strict liability for recordkeeping violations. United States v. Green Drugs, 905 F.2d 694, 696 (3rd Cir.), cert. denied, 498 U.S. 985, 111 S.Ct. 518, 112 L.Ed.2d 530 (1990). The recordkeeping provisions of the Act apply to all persons who dispense drugs, even if they have not registered as required under the Act. United States v. Clinical Leasing Service, Inc., 759 F.Supp. 310 (E.D.La.1990), aff'd, 925 F.2d 120 (5th Cir.1991), cert. denied, 502 U.S. 864, 112 S.Ct. 188, 116 L.Ed.2d 149 (1991). Persons who dispense drugs are strictly liable and cannot absolve themselves by arguing that the violations were "due to human error" or that there was "no intent to violate the statute." Green Drugs, 905 F.2d at 695. Compliance with reasonable commercial recordkeeping practices is no defense to liability. United States v. Williams, 416 F.Supp. 611, 614 (D.D.C.1976). Knowing or intentional violations of the statute are subject to criminal penalties. 21 U.S.C. § 842(a)(5). A civil fine of up to a maximum of $25,000.00 may be assessed for each viola-

tion of the statute, without evidence of intent. 21 U.S.C. § 842(c)(1).

## B. Biennial Inventories

■ Section 827(a) of the Controlled Substances Act provides that each DEA registrant who dispenses controlled substances must "make a complete and accurate record of all stocks thereof on hand" when the registrant begins to dispense controlled substances and every two years thereafter, either on the anniversary of the initial record or on the registrant's regular inventory date if it is within six months of the anniversary. 21 U.S.C. § 827(a). The regulation provides that if the registrant elects to take the biennial inventory on the registrant's regular general physical inventory date or another fixed date, the registrant "shall notify the Administration of this election and of the date on which the biennial inventory will be taken." 21 C.F.R. 1304.13.

A pharmacist's biennial inventory must record, among other things, the name of the substance and the quantity of the substance. 21 C.F.R. §§ 1304.15. If the substance is a Schedule II drug, the pharmacist must make an exact count of the contents of each container. 21 C.F.R. § 1304.17. The registrant must indicate "on the inventory records whether the inventory is taken as of the opening or as of the close of business and the date the inventory is taken." 21 C.F.R. § 1304.12.

Pharmacists are required to keep biennial inventories separately from all other records and to make them available for at least two years for inspection and copying for government inspection. 21 U.S.C. § 827(b). Under § 842(a)(5), "to refuse or fail to make, keep, or furnish any record, report, notification, declaration, order or order form, statement, invoice, or information required" under the Controlled Substances Act is unlawful.

The mandated biennial inventories were not produced, and could not be produced at either pharmacy at the time of the inspections in August and September of 1993.

David Poulin testified at trial that he did not and does not take a biennial inventory of Schedule II drugs, and that instead of count-ing the contents of each container, he uses a "rolling inventory" system of deduction of the amount most recently dispensed from the previous number listed. The rolling inventories of Schedule II drugs do not meet the regulatory requirements for biennial inventories. They are not a listing of all Schedule II drugs present on one date. They do not state whether they were taken at the opening or close of business. They do not represent an accounting for drugs present by counting every pill. Moreover, the Schedule II drugs that were kept in the brown paper bag were not being dispensed and thus were not counted, so it is impossible to determine whether they were present in the pharmacy on the date the last biennial inventory should have been taken.

On September 27, 1995, two years after the inspections, defendants attached to their opposition to plaintiff's Motion for Summary Judgment documents that they claimed to be biennial inventories for Schedule III, IV and V drugs. These documents do not meet the requirements of the regulations for biennial inventories, because they do not include Schedule II drugs, they do not state whether they were taken at the close or opening of business, they are not labelled, none of the columns is labelled, and the date on which at least one appears to have been taken is not May 1 as required by 21 C.F.R. 1304.11(d) and 1304.13. In any event, in violation of 21 U.S.C. § 827(b), the documents attached by defendants were not "available" for government inspection at the time of the investigation.

In short, David Poulin and Mattapoisett Pharmacy, Inc. failed to keep biennial inventories and to make them available for inspection as required by 21 U.S.C. § 827 and 21 C.F.R. § 1304.

## C. Records of Receipt and Sales of Schedule II Drugs

■ The Controlled Substances Act provides that each registrant

shall maintain, on an updated basis, a complete and accurate record of each such substance manufactured, received, sold, delivered or otherwise disposed of by him
. . .

21 U.S.C. § 827(a)(3). These records must be maintained separately from all other records of the pharmacist and in strict accordance with regulations of the Attorney General, and they must be available for inspection and copying by an authorized official for at least two years. § 827(b). It is a violation of § 842(a)(5) "to refuse or fail to make, keep, or furnish any record, report, notification, declaration, order or order form, statement, invoice, or information required" under the Controlled Substances Act.

DEA and state investigators found violations at both the Marion and Mattapoisett Pharmacies, with respect to Schedule II drugs. At the Marion Pharmacy, approximately 1,263 units of Roxicet, a Schedule II drug, were missing on the date of the inspection. This was substantially more than the 951 units of Roxicet that the pharmacy had reported as missing up until that time.

At Mattapoisett Pharmacy, approximately 3,300 units of Schedule II drugs disappeared. David Poulin testified that most of the drugs reported stolen had been kept in an unmarked paper bag in an unlocked wooden cabinet in the dispensing area. The drugs reported stolen included Codeine, Morphine, Methadone, Roxicet, Percodan, Percocet, Dilaudid, Demoral, Dexedrine, Dolphine, MS Contin, Nembutal, Pentobarbital, Opium, Seconal, Tuinal, Tylox, and Secobarbital in various forms. Mr. Poulin stated that he can tell from memory that most of the missing drugs were out of date drugs that were stored in the paper bag, but, in violation of 21 U.S.C. § 842(a)(5) and 21 C.F.R. § 1304.21, he provided no record of when the drugs were last present in the pharmacy.

In short, David Poulin and Mattapoisett Pharmacy, Inc. did not keep complete and accurate records of eighteen different Schedule II controlled substances as required by 21 U.S.C. § 827(a)(3).

Also, a container of Cocaine HCL powder, a Schedule II drug, was on the shelf at Mattapoisett Pharmacy, and, in violation of 21 U.S.C. § 842(a)(5), the pharmacy had no record documenting its receipt.

### D. Order Forms

■ Under the Controlled Substances Act, controlled substance order forms (DEA Form 222s) for schedule I and II drugs must be prepared and executed by the purchaser (in this case the pharmacist), and must be signed and dated by the purchaser or a person authorized to sign an order form on behalf of a purchaser. 21 C.F.R. § 1305.06. To "authorize" a person to sign on behalf of the purchaser, the purchaser must execute a power of attorney for that person. 21 C.F.R. § 1305.07. The power of attorney forms must be available for inspection and kept for two years along with the order form records. 21 C.F.R. § 1305.07. The order forms themselves must record the amount of substances received and the date on which they are received. 21 C.F.R. § 1305.09(e). Failure to "make, keep, or furnish any ... order or order form" is a violation of 21 U.S.C. § 842(a)(5).

The evidence shows that at the Marion Pharmacy, seven Order Form 222s were defective because they did not contain the number of controlled substances received or the date received. At the Mattapoisett Pharmacy, there were two defective Order Form 222s, one of which was unsigned and one of which was signed by a pharmacist for whom no power of attorney was available at the time of the inspection in August 1993.

Two years after the inspections, on September 27, 1995, defendants attached to their opposition to Plaintiff's Motion for Summary Judgment what they claim to be the missing "power of attorney" documents. In violation of 21 U.S.C. § 827(b), these documents attached by defendants were not "available" for government inspection at the time of the investigation.

In short, the defendants are liable for a total of nine defective order forms, in violation of 21 U.S.C. §§ 827–828 and C.F.R. §§ 1305.04–09.

### E. Invalid Prescriptions

■ The Controlled Substances Act provides that valid prescriptions must be issued by an authorized person and must include the date when issued, the full name and

address of the patient, the drug name, strength, dosage form, quantity described, directions for use and the name, address and DEA registration number of the issuing practitioner. 21 C.F.R. § 1306.05. The Controlled Substances Act imposes liability on pharmacists who fill invalid prescriptions. 21 C.F.R. § 1306.05(a).

Defendants are liable for filling a total of six invalid prescriptions. At the Marion Pharmacy, five prescriptions were filled even though the issuing physician had not placed the patient's address on the prescription, and one prescription was filled that was undated.

**F. Security Requirements**

█ In addition to recordkeeping regulations, DEA regulations require that all registrants "provide effective controls and procedures to guard against theft and diversion of controlled substances." 21 C.F.R. § 1301.71(a). Pharmacies must either store Schedules II, III, IV and V controlled substances "in a securely locked, substantially constructed cabinet," or "disperse such substances throughout the stock of noncontrolled substances in such a manner as to obstruct theft or diversion of the controlled substances." 21 C.F.R. § 1301.75(b). Neither the regulations nor precedents specify a penalty for violation of these security provisions.

From the evidence in this case, the court infers that most of the drugs discovered missing at the Mattapoisett Pharmacy in July 1993 had not been "disperse[d] ... throughout the stock" nor placed in a "securely locked, substantially constructed cabinet," but instead had been stored together in a brown paper bag kept in an unlocked cabinet in an unlocked area, in violation of 21 C.F.R. § 1301.75.

**G. Personal Liability**

█ Although Mattapoisett Pharmacy, Inc. was listed as the registrant, the statute specifically makes the stated obligations to produce required records applicable to all persons, not simply to registrants. 21 U.S.C. § 842(a)(5). The court determines that David Poulin is personally liable for all record-production violations under § 842(a)(5).

█ Mattapoisett Pharmacy, Inc. is also the alter ego of its sole owner, David Poulin, and thus David Poulin cannot use the corporate name to shield himself from personal liability. Corporate formalities were not observed by Mattapoisett Pharmacy, Inc., and corporate records were not kept. The corporation was not separately controlled, and by Mr. Poulin's own admission, was created for tax purposes. Under these circumstances, both David Poulin and the corporation are liable for any violations of law committed by the corporation. *See Pepsi–Cola Metropolitan Bottling Co. v. Checkers,* 754 F.2d 10, 15–16 (1st Cir.1985).

█ Mr. Poulin is also personally liable for any violations of recordkeeping provisions because he was the responsible corporate officer whose duty it was to insure that the recordkeeping provisions of 21 U.S.C. § 801 *et seq.* were followed. Mr. Poulin is the sole shareholder, president, and treasurer of Mattapoisett Pharmacy, Inc. He was in charge of both pharmacies on a daily basis. Even if the corporation is not a shell, a corporate officer can be held personally liable for violations of law, where there is strict liability, because he is the person who had "authority with respect to the conditions that formed the basis of the alleged violations." *United States v. Park,* 421 U.S. 658, 674, 95 S.Ct. 1903, 1912, 44 L.Ed.2d 489 (1975).

For all of these reasons, the court determines that David Poulin, as well at the Mattapoisett Pharmacy, Inc., is liable for the violations of the Controlled Substances Act found at Mattapoisett and Marion Pharmacies.

**H. Penalty**

█ The Controlled Substances Act provides for a civil penalty of up to $25,000 per violation of its recordkeeping provisions. 21 U.S.C. § 842(c)(1). In determining the amount of civil penalties to be imposed under 21 U.S.C. § 842, courts have considered the following four factors: (1) the willfulness of the violations; (2) whether, and to what extent the defendant profited from the illegal activity; (3) harm to the public; and (4) the financial capacity of the defendant to pay.

*United States v. Barbacoff,* 416 F.Supp. 606, 610 (D.D.C.1976); *United States v. Queen Village Pharmacy,* 1990 WL 165907, *2 (E.D.Pa.).

As to the first factor, the court finds on the evidence in this case that defendants acted knowingly and willfully with regard to their failure to maintain biennial inventories. David Poulin, as the person in charge of the pharmacies and a pharmacist himself, was responsible for being familiar with DEA regulations and complying with them. In violation of 21 U.S.C. § 827(b), no biennial inventories were available for government inspection at the time of the investigation. The purported biennial inventories for Schedule III, IV and V drugs that defendants provided two years after the inspection do not meet the requirements of the regulations for biennial inventories under 21 C.F.R. 1304.11(d) and 1304.13. At trial, Mr. Poulin testified that he *still* does not take a biennial inventory of Schedule II drugs. Mr. Poulin testified that instead of counting the contents of each container, he uses a "rolling inventory" system of deductions from a running total, which is a system that he finds more "useful". *See also* Poulin Deposition 48, 105, 163 (stating that he does not need to, and does not do, a biennial inventory for Schedule II controlled substances). The evidence plainly shows that Mr. Poulin and Mattapoisett Pharmacy, Inc. *still* disregard the requirements for a biennial inventory of Schedule II drugs, despite explicit DEA regulations, instructions from the DEA agent at the inspection, and the commencement and prosecution of this civil action by the United States. Defendants have demonstrated a blatant and willful disregard for the regulations regarding biennial inventories, in violation of 21 U.S.C. § 827 and 21 C.F.R. § 1304.17. The court determines that a significant fine is appropriate for these violations, in order to emphasize the importance of these regulations, encourage compliance, and deter noncompliance.

Also the court determines that, aside from the failure to maintain biennial inventories, the defendants acted with a clear disregard for requirements regarding recordkeeping of many of the Schedule II controlled substances within their custody. At the Marion Pharmacy, approximately 1,263 units of Roxicet were missing on the date of the inspection, substantially more than the 951 units of Roxicet that the pharmacy had reported as missing up until that time. At Mattapoisett Pharmacy, approximately 3,300 units of Schedule II drugs disappeared, and, in violation of 21 U.S.C. § 842(a)(5) and 21 C.F.R. § 1304.21, Mr. Poulin could provide no record of when the drugs were last present in the pharmacy. The fact that these drugs had been kept in an unmarked paper bag in an unlocked wooden cabinet in the dispensing area, in violation of specific security regulations under 21 C.F.R. § 1301.75(b), is an additional factor showing defendants' lack of regard for security of the Schedule II drugs in their custody. Due to the inadequacy of the records at the Marion and Mattapoisett Pharmacies, the DEA investigators were unable to determine when the drugs disappeared and whether additional drugs had disappeared at other times. The court determines that defendants' disregard for the security and recordkeeping of Schedule II drugs is a factor making a significant penalty appropriate for the eighteen violations of failing to keep accurate records of the eighteen different Schedule II drugs that disappeared from the two pharmacies, and also for failing to record receipt of Cocaine HCL powder, a Schedule II drug, at Mattapoisett Pharmacy.

As to all other violations, the court determines that the evidence before the court is insufficient to show willful or deliberate violation, even though the evidence does show shabby recordkeeping and lack of security. The evidence failed to show that the defendants profited from any of the violations.

The third factor to be considered is harm to the public. The drugs that disappeared from the Mattapoisett and Marion pharmacies are drugs with a very high abuse potential. Many of the drugs that disappeared are oxycodone based drugs such a Roxicet, Percocet and Percodan. The abuse of drugs of this type can cause serious trauma and even death to abusers. The disappearance of these drugs constitutes a serious public health risk. According to DEA Investigator Harold Mosher, the street value of the miss-

ing oxycodone drugs ranges from $6–$8 per pill for most of the missing drugs to several times that much for the Dilaudid. The total street value of the drugs that disappeared is between approximately $25,000 and $40,000. The potential harm of the missing drugs to the public warrants a significant fine in this case.

Finally, the fourth factor to be considered is the ability to pay. Mr. Poulin is 100% owner of Mattapoisett Pharmacy, Inc., which has gross sales in excess of $900,000 per year, inventory of $184,000 and total assets worth $217,813, as well as its value as a going concern. Mr. Poulin's other assets include an unencumbered commercial property of which he is 50% owner with his wife, worth approximately $240,000; and an unencumbered residential lot of which he is 50% owner with his wife, worth between $50,000 and $75,000. Mr. Poulin is 50% owner with his wife, of the home in which he lives, which is valued at approximately $150,000 and is subject to a $103,000 mortgage. In addition, Mr. Poulin alone owns another commercial property worth approximately $285,000, on which there is a $131,000 mortgage.

The court finds that the defendants have substantial assets from which to pay a civil penalty.

## IV. Summary

The court finds that Mr. Poulin and Mattapoisett Pharmacy, Inc. committed the following thirty-six recordkeeping violations of 21 U.S.C. §§ 827, 828 and 842, each of which subjects them to a fine of up to $25,000:

1. The defendants, David P. Poulin and Mattapoisett Pharmacy, Inc. committed two violations of 21 C.F.R. § 1304.11–13, 15 and 17 by failing to maintain and have available biennial inventories at both Marion Pharmacy and Mattapoisett Pharmacy.

2. The defendants, David P. Poulin and Mattapoisett Pharmacy, Inc. committed eighteen violations of 21 U.S.C. § 827(a)(3) and 21 C.F.R. § 1304.2, by failing to keep accurate records of eighteen different Schedule II drugs.

3. The defendants, David P. Poulin and Mattapoisett Pharmacy, Inc. committed one violation of 21 C.F.R. § 1304.21, by failing to

record receipt of HCL powder, a Schedule II drug, at Mattapoisett Pharmacy.

4. The defendants, David P. Poulin and Mattapoisett Pharmacy, Inc. committed nine violations of 21 U.S.C. §§ 827–828 and C.F.R. §§ 1305.04–09, by having nine defective DEA Order Form 222s.

5. The defendants, David P. Poulin and Mattapoisett Pharmacy, Inc. committed six violations of 21 C.F.R. § 1306.05, by filling six invalid prescriptions.

## ORDER

For the foregoing reasons it is hereby ORDERED:

The Clerk is directed to enter Judgment in favor of the United States of America, plaintiff, and against David P. Poulin and Mattapoisett Pharmacy, Inc., defendants, in the total amount of $50,000, consisting of:

(1) $25,000 as to the violations stated in paragraph (1) of the foregoing Summary;

(2) $18,000 as to the violations stated in paragraph (2) of the foregoing Summary;

(3) $1000 as to the violation stated in paragraph (3) of the foregoing Summary;

(4) $3,600 as to the violations stated in paragraph (4) of the foregoing Summary;

(5) $2,400 as to the violations stated in paragraph (5) of the foregoing Summary.