UNITED STATES of America,
Plaintiff,

v.

James D. LITTLE, et al., Defendants.

Civil Action No. 97–30067–MAP.

United States District Court,
D. Massachusetts.

July 23, 1999.

Karen L. Goodwin, U.S. Attorney's Office, Springfield, MA, for Plaintiff.

Robert C. Pavlan, Jr., Pavlan & Associates, Belmont, MA, for Defendant.

*MEMORANDUM AND ORDER REGARDING OBJECTIONS TO REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANTS' MOTIONS TO SUPPRESS AND FOR SUMMARY JUDGMENT*

PONSOR, District Judge.

On April 6, 1999 Magistrate Judge Kenneth P. Neiman recommended that the defendants' Motion to Suppress Evidence be denied, that the plaintiff's Motion for Summary Judgment be allowed and that defendant's Motion for Summary Judgment be denied. After a careful, *de novo* review of the motions, the Magistrate Judge's Report and Recommendation, the defendants' objections and the Government's opposition to those objections, this court is firmly persuaded that the Report and Recommendation is correct.

For the reasons set forth in Magistrate Judge Neiman's detailed and thoughtful memorandum, the defendants' Motions to Suppress and for Summary Judgment are hereby DENIED and plaintiff's Motion for Summary Judgment is hereby ALLOWED. The allowance of the plaintiff's motion disposes of the issue of liability. The clerk will set a date and time for a

conference to establish a schedule to address the issue of remedy.

It is So Ordered.

*REPORT AND RECOMMENDATION REGARDING DEFENDANTS' MOTION TO SUPPRESS EVIDENCE (Docket No. 32), PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Docket No. 30), and DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Docket No. 33)*

NEIMAN, United States Magistrate Judge.

In its ten count complaint, the United States of America ("the Government") seeks civil penalties against James D. Little ("Little") and Little's HSC Pharmacy ("Little's Pharmacy") (collectively "Defendants"), for alleged violations of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 *et seq.* (the "Controlled Substances Act" or "Act"), and regulations promulgated thereunder. Each count of the complaint alleges a specific violation of the record keeping provisions of the Act. In Counts I through V, the Government maintains that Defendants had shortages of various Schedule II substances. In Counts VI through VIII, the Government alleges that Defendants had impermissible overages in violation of the Act. In Count IX, the Government claims that Defendants failed to file the requisite power of attorney form for one of its pharmacists. And in Count X, the Government alleges that Defendants failed to accurately record the receipt of a number of controlled substances on the required Drug Enforcement Administration ("DEA") form 222.

Presently before the court is the Government's motion for summary judgment, in which it claims that Defendants are strictly liable, as mandated by the Act, for the various violations proven by the evidence of record. In turn, Defendants have moved for summary judgment claiming that the Government presents insufficient evidence as a matter of law. Defendants have also moved to suppress evidence obtained through an administrative warrant.

All three motions have been referred to the court for a report and recommendation pursuant to Rule 3 of the Rules for United States Magistrates of the United States District Court for the District of Massachusetts. *See* 28 U.S.C. § 636(b)(1)(B). For the reasons which follow, the court will recommend that Defendants' motions to suppress and for summary judgment be denied and that the Government's motion for summary judgment be allowed.

## I. *SUMMARY JUDGMENT STANDARD*

In accordance with Fed.R.Civ.P. 56(c), summary judgment will be granted if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." *Magee v. United States,* 121 F.3d 1, 3 (1st Cir. 1997). Once the moving party has demonstrated that no genuine issue of material fact exists, the burden is on the opposing party to contradict that demonstration by coming "forward with specific provable facts which establish that there is a triable issue." *Aponte Matos v. Toledo Davila,* 135 F.3d 182, 186 (1st Cir.1998). A genuine issue is one which a reasonable fact finder could resolve in favor of the non-moving party. *Id.*

Not every genuine factual conflict, however, necessitates a trial. "It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the non-movant that the materiality hurdle is cleared." *Parrilla–Burgos v. Hernandez–Rivera,* 108 F.3d 445, 448 (1st Cir.1997) (internal quotations omitted). The facts are to be viewed in a light most favorable to the non-movant. *Dykes v. DePuy, Inc.,* 140 F.3d 31, 36 (1st Cir.1998). When deciding cross motions for summary judgment, the court must consider each motion separately and draw inferences against each movant in regard to their respective

motions. *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 6 (1st Cir.1997). Summary judgment may be granted when there is no dispute as to any material fact and only questions of law remain. *See id.*

## II. FACTUAL BACKGROUND

The facts are largely undisputed, particularly because Little asserted his Fifth Amendment privilege against self-incrimination with regard to most of the Government's allegations. At all relevant times Little was the president, treasurer and owner of Little's Pharmacy, a retail pharmacy in North Adams, Massachusetts. As it was authorized to dispense Schedule II, III, IV and V controlled substances, the pharmacy was required to register with the DEA. The DEA monitors registrants' compliance with the record keeping provisions of the Act through administrative inspections and audits.

In April of 1995, DEA investigator Jerry Campagna received an anonymous tip that an employee of Little's Pharmacy may have been diverting an oxycodone based drug. On May 9, 1995, pursuant to the Controlled Substances Act, the Government submitted an application for an administrative warrant to inspect, copy and verify the correctness of records, reports and other documents. According to the application, Little's Pharmacy had never before been inspected to ensure its compliance with the Act.

After the warrant was issued by this court, an administrative inspection was conducted at Little's Pharmacy on May 11, 1995, followed by a records audit. (Exhibit 1 (Docket No. 31) Lombardo Dec. ¶ 4.) The inspection and audit uncovered inaccuracies in Little's Pharmacy's records, (id. ¶ 5; Exhibit 2), including shortages of five Schedule II controlled substances. Those shortages included 3,084 tablets of Roxicet, 642 tablets of Methylphenidate 5 mg, 561

tablets of Methylphenidate 10 mg, 286 tablets of Percocet, and 250 tablets of Roxiprin. (Lombardo Dec. ¶ 6; Exhibit 2; Exhibit 4 (Little Dep. at 10–13); Exhibit 5 (Little Ints. Nos. 14–22).) The Government maintains that each of the missing narcotics has a black market or street value and a high potential for abuse. (Lombardo Dec. ¶ 7.)

The audit also disclosed several overages of Schedule II substances. In particular, the pharmacy lacked the requisite DEA documentation, form 222, to account for 220 tablets of Methylphenidate 20 mg., 179 tablets of Ritalin 5 mg., and 120 tablets of Ritalin 10 mg. (Lombardo Dec. ¶ 9; Little Dep. at 15–16.) Also disclosed was an incomplete form 222, filled in by Little, which lacked the number of packages and date received of certain Schedule II substances. (Lombardo Dec. ¶ 10; Exhibit 3; Little Dep. at 8.)

The inspection also revealed other deficiencies, specifically that Little's Pharmacy did not have a power of attorney on file for its pharmacist, John Fantasia ("Fantasia"). A power of attorney must be filed for individuals authorized by the pharmacy to obtain and execute order forms. (Lombardo Dec. ¶ 9; Little Dep. at 15–16.)

## III. DISCUSSION

### A. Defendants' motion to suppress[1]

Defendants assert that all evidence seized as a result of the May 11, 1995 execution of the administrative inspection warrant should be suppressed. Defendants claim that the particularity requirements for issuance of an administrative warrant were not met and that the inspection was mere pretense for a criminal investigation.

■ Although, generally speaking, "[t]here is no exclusionary rule in civil

---

1. This court itself approved the administrative warrant at issue. It addresses Defendants' motion with the knowledge that its recommendation is subject to *de novo* review. *Cf.*

*Camacho v. Autoridad de Telefonos de Puerto Rico,* 868 F.2d 482, 490 (1st Cir.1989) (that judge authorized previous wiretap does not necessitate recusal).

cases," *Borges v. Our Lady of the Sea Corp.*, 935 F.2d 436, 440 (1st Cir.1991), the Fourth Amendment does govern administrative warrants. *Donovan v. Enter. Foundry, Inc.*, 751 F.2d 30, 35 (1st Cir. 1984). If an administrative warrant may be quashed for insufficient indicia of probable cause, even when probable cause for an administrative warrant is less strict than that for a criminal warrant, *id.* at 33–34, the court sees no reason why the evidence seized by such a warrant could, under certain circumstances, also be "quashed," i.e., suppressed. Indeed, even in civil cases, the decision to exclude evidence is within the discretion of the court. *Borges*, 935 F.2d at 440.

■ There appears to be no dispute that items to be inspected and seized through an administrative warrant need be stated with some degree of particularity. *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 309–12, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). The mere assertion in an application for an administrative warrant that the search will be limited to evidence deemed violative of a particular statute may be impermissibly overbroad. *United States v. Storage Spaces Designated Nos. 8 and 49*, 777 F.2d 1363, 1369 (9th Cir.1985). "Delineating the scope of a search with some care is particularly important where documents are involved." *Marshall*, 436 U.S. at 324, 98 S.Ct. 1816. If a warrant provides "sufficient standards by which the DEA Investigator reasonably could distinguish between those documents he could inspect and those he could not the warrant [is] sufficiently particular." *United States v. Burka*, 700 F.Supp. 825, 829 (E.D.Pa. 1988).

■ Here, the warrant application identified "records, reports and other documents Little's HSC Pharmacy, Inc. is required to keep under Title 21, United States Code, Sections 827 and 828, and regulations promulgated thereunder, to inventory any stock of controlled substances on the premises, and to perform all other lawful activities authorized in Title 21,

U.S.C., Section 880." (Pavlan Aff. (Docket No. 37) Exhibit B.) In addition, the affidavit submitted in support of the application for the warrant was highly specific as to the documents sought. (Pavlan Aff. Exhibit C ¶¶ 2–3.) In the court's opinion, the level of specificity contained in the warrant and supporting affidavit was sufficient.

Defendants' second line of defense against the Government's use of evidence seized as a result of the administrative warrant is that the civil investigation was a subterfuge for a criminal investigation. They argue that the Government sought an administrative warrant to avoid the more stringent Fourth Amendment probable cause requirement applicable in criminal matters.

■ There is no dispute that, in light of the desire to protect public safety and prevent the diversion of drugs, the probable cause requirement is comparatively lenient in the context of highly regulated pharmacies. It may be based solely on the fact that a pharmacy has not been previously inspected. *Matter of Searches and Seizures Conducted on October 2, and 3, 1980*, 665 F.2d 775, 777 (7th Cir.1981). Even so, the government's actual motivation to conduct its investigation is irrelevant so long as the inspector has reason to inspect pursuant to the Act, even if searching for criminal activity. *United States v. Rogers*, 976 F.2d 734 (6th Cir.1992) (Table) (citing cases). *See also United States v. Acklen*, 690 F.2d 70 (6th Cir.1982).

■ The court is unconvinced that the instant inspection was mere pretense. In short, Defendants have provided insufficient evidence in support of their claim. In fact, Defendants were ultimately charged civilly, not criminally. That fact alone demonstrates that the execution of the administrative warrant was not a subterfuge for a criminal investigation, Defendants' fears to the contrary. Accordingly, the court will recommend that Defendants' motion to suppress be denied.

## B. *The parties' cross-motions for summary judgment*

### 1. *Retroactivity*

Before addressing the substance of the parties' cross-motions for summary judgment, the court must confront, as requested by the parties, changes enacted on October 1, 1998, to the Controlled Substances Act, more particularly, whether those changes should be applied retroactively. Defendants say yes, the Government no.

At the time this case was filed in April of 1997, the Act mandated strict liability for record keeping violations. In addition, civil penalties could amount to as much as $25,000 for each violation. Pursuant to the October amendments, however, strict liability is no longer the substantive standard. Rather, the Government must allege and prove negligence in record keeping for liability to attach. In addition, the maximum fine was decreased to $10,000 per violation.

■ The Supreme Court has addressed the issue of retroactivity a number of times. As made evident by the Court's most recent opinions, retroactive application of a statute is, in general, highly disfavored, so much so that a presumption exists against it. *See Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Hughes Aircraft Co. v. United States*, 520 U.S. 939, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997). In essence, the Court has directed that an individual should be made to comply with laws enunciated at the time the conduct occurred. As Justice Story's oft-quoted definition of impermissible retroactive legislation states, "[e]very statute which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective." *See Hughes Aircraft*, 520 U.S. at 947, 117 S.Ct. 1871 (quoting *Society for Propagation of the Gospel v. Wheeler*, 22 F.Cas. 756, 767 (C.C.D.N.H.1814) (No. 13, 156)).

■ The court sees no reason why the presumption against retroactive application of the October 1998 amendments to the Controlled Substances Act should not hold. First, it is undisputed that Congress made no express mandate that the Act be applied retroactively. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 268–69, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). Second, as the Government asserts, the new law, if applied retroactively, would "attach new legal consequences" adverse to the Government's interests to already completed events. *Lindh*, 521 U.S. at 323, 117 S.Ct. 2059.

Granted, in most cases in which retroactivity is at issue, it is an individual plaintiff—rather than the Government—who seeks to avoid the stricter penalties or burdens imposed by a new law. *See id.* (inmate seeking habeas relief not subject to more stringent amendments of the Antiterrorism and Effective Death Penalty Act). In other cases in which retroactivity is at issue, the plaintiff may be a private company seeking to avoid new financial or substantive burdens imposed by government action. *See Landgraf*, 511 U.S. at 270, 114 S.Ct. 1483 (vested rights may not be impaired by retroactive effect of governmental enactments). Here, in contrast, it is the Government, as the plaintiff, who seeks to avoid the retroactive application of an act of Congress. Notwithstanding this anomaly, the court cannot find any case law which either sets this case apart or calls for the use of a different standard simply because it is the government which seeks to avoid the retroactive application of a statute.

Finally, the court believes that the Controlled Substances Act should be viewed in the context of the general savings clause, 1 U.S.C. § 109, which, as applied here, authorizes the continuance of preexisting prosecutions under statutes which have been amended after the alleged violations have occurred. *See Commonwealth of Massachusetts v. Sec. of Agriculture*, 984

F.2d 514, 519 (1st Cir.1993). As the Government asserts, had Congress intended a retroactive change in the standards applied, it would have had to have made an express provision to that effect as required by the savings clause. It did not. Accordingly, the court will recommend that the amendments to the Act—at least the change in the substantive standard—not apply retroactively to the case at bar and that the standard to be applied be strict liability, the standard in effect at the time of Defendants' conduct.

The court's recommendation does not encompass changes in civil penalties accomplished by the 1998 amendments. The Government concedes that that issue is not yet before the court. If anything, the Government acknowledges that, despite its disfavoring the retroactive application of the Act, the change in tide regarding the maximum penalty per violation may have a significant effect on the sanctions which ought to be levied by the court.

### 2. Strict Liability

The Controlled Substances Act mandates adherence to stringent record keep-

ing with regard to various regulated drugs.[2] The Act was passed in 1970 to reduce the number of legitimate controlled substances diverted into illegal drug traffic. *United States v. Moore,* 423 U.S. 122, 135, 96 S.Ct. 335, 46 L.Ed.2d 333 (1975). As a result, the focus of the Act is record keeping and its provisions apply to all who have the authority to dispense drugs. *United States v. Green Drugs,* 905 F.2d 694, 695–96 (3d Cir.1990). The law is well settled that the Act, as applied here, imposes strict liability for those who dispense drugs. *Id.* at 695. Defendants concede as much. Those falling within the purview of the Act may not exculpate themselves by claiming "human error," inadvertence or lack of intent. *Id. See also United States v. Poulin,* 926 F.Supp. 246, 250 (D.Mass. 1996). What Defendants knew or should have known is immaterial.

■ The Government argues that Defendants' strict liability—and therefore summary judgment in the Government's favor—is unavoidable based on the evidence of record. First, the Government urges the court to give preclusive effect to

**2.** Section 827 provides in pertinent part:

(a) Inventory

Except as provided in subsection (c) of this section—

(1) every registrant under this subchapter shall, on May 1, 1971, or as soon thereafter as such registrant first engages in the manufacture, distribution, or dispensing of controlled substances, and every second year thereafter, make a complete and accurate record of all stocks thereof on hand, except that the regulations prescribed under this section shall permit each such biennial inventory (following the initial inventory required by this paragraph) to be prepared on such registrant's regular general physical inventory date (if any) which is nearest to and does not vary by more than six months from the biennial date that would otherwise apply;

(2) on the effective date of each regulation of the Attorney General controlling a substance that immediately prior to such date was not a controlled substance, each registrant under this subchapter manufacturing, distributing, or dispensing such substance shall make a complete and accurate record of all stocks thereof on hand; and

(3) on and after May 1, 1971, every registrant under this subchapter manufacturing, distributing, or dispensing a controlled substance or substances shall maintain, on a current basis, a complete and accurate record of each such substance manufactured, received, sold, delivered, or otherwise disposed of by him, except that this paragraph shall not require the maintenance of a perpetual inventory.

(b) Availability of records

Every inventory or other record required under this section (1) shall be in accordance with, and contain such relevant information as may be required by, regulations of the Attorney General, (2) shall (A) be maintained separately from all other records of the registrant, or (B) alternatively, in the case of non-narcotic controlled substances, be in such form that information required by the Attorney General is readily retrievable from the ordinary business records of the registrant, and (3) shall be kept and be available, for at least two years, for inspection and copying by officers or employees of the United States authorized by the Attorney General.

21 U.S.C. § 827.

the state licensing board's finding that Little's actions constituted "a failure to make and maintain proper accounting of controlled substances and a failure to make and maintain proper records of controlled substances in violation of G.L. c. 94C § 25(5)." (Pl.Supp.Mem. (Docket No. 61) Exhibit 1 at 6.) While it is true that the resolution of factual matters by a state administrative agency is entitled to preclusive effect, *Bath Iron Works Corp. v. Director, Office of Workers' Compensation Programs, U.S. Dep't of Labor,* 125 F.3d 18, 21 (1st Cir.1997), Defendants cannot be said to have had a full and fair opportunity to litigate the underlying legal claim here, a prerequisite to such offensive collateral estoppel. *Monarch Life Ins. Co. v. Ropes & Gray,* 65 F.3d 973, 981 (1st Cir.1995). More importantly, the court doubts whether the state board's administrative decision may be considered a final judgment on the merits. *See Stowe v. Bologna,* 415 Mass. 20, 610 N.E.2d 961 (1993). The court understands that Defendant may seek judicial review of the state board's finding.

Nevertheless, the Government maintains that, independent of the state board's finding, Defendants are strictly liable based on the evidence provided the court. In response, Defendants assert that the Government cannot prove even its *prima facie* case, let alone deserve judgment as a matter of law. Thus, while Defendants agree that strict liability may be imposed for record keeping violations, at least prior to the amendments to the Act in 1998, they strongly disagree as to what proof would demonstrate violations of this kind.

In essence, Defendants' argument, boils down to an assertion that the Government cannot prove a negative. The Government, Defendants maintain, cannot point to any particular record as being inaccurate. Rather, they assert, the documents

collected by the DEA during the administrative inspection of Little's Pharmacy were correct unto themselves.

■ Likewise, Defendants do not directly contest the results of the audit. Instead, they challenge its methodology. It was for this reason that Defendants moved to strike the Campagna Declaration, (Docket No. 48), claiming that the inspector lacked personal knowledge of the pill audit because, rather than count by hand, he used a pill counter. For similar reasons, Defendants maintain that portions of the Declaration of Frank Lombardo, another DEA investigator, should be stricken (Docket No. 40). The court previously denied both motions to strike by margin notation.[3]

Still, Defendants press forward and argue that the Government cannot identify any specific records which were incomplete or inaccurate. In support, Defendants point to Lombardo's deposition in which he was asked if he could "identify any document seized from Little's Pharmacy that is inaccurate and/or incomplete?" His answer and ensuing testimony follow:

A: Do you want me to testify to each individual record that was seized each prescription on the face of its own is that a complete record ... is that the question?

Q: Correct, I am making an assumption and trying to get a response ... It was omitted from the answer to [interrogatory] number nine that any records seized from Little's Pharmacy was in fact inaccurate or incomplete ... What was stated in interrogatory number nine was that records were incomplete in that there were not sufficient records of disposal.

A: I think the question was answered as a whole for that drug itself. Are all

---

3. The declarations are admissible under Rule of Evidence 803(8) as a "record, report, statement, or data compilation ... of public offices or agencies ... in civil actions and proceedings investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." The First Circuit has flatly rejected the argument that official firsthand knowledge be required in the compilation of such a report. *Robbins v. Whelan,* 653 F.2d 47 (1st Cir.1981).

the records complete and accurate for drug number one, no, these are missing records.

The question would have to be phrased differently to seek the answer you're seeking for each individual record that was taken ... Is this a complete record.

Q: Let me tell you what I am trying to get to the bottom of. Since the inception of this case and since I have been involved in this case the question that I have always had is identify the record that is incomplete and/or inaccurate.

And I did try to ask it by interrogatory and I think I got a response that the records that were seized did in fact accurately reflect what was dispensed.

However there must be additional records that weren't contained at Little's Pharmacy of disposition and because those records weren't maintained Mr. Little's records were incomplete and/or inaccurate ... Is that a correct representation?

A: I believe so.

Q: So if ... And we don't have them in front of us ... But if we were to pull out a Schedule II Controlled Substances prescription dispensed by Little's Pharmacy for Joe Smith in the amount of 20 and it contained all of the information required under the Federal Controlled Substances Act would that be an accurate and complete record of disposal for those tablets identified in the prescription?

A: For that particular prescription for what you described, yes.

Q: If we were to take that to the next step and say you pulled out every Schedule II controlled substance prescription and it contained all the information required under the Federal Controlled Substances Act each of those Schedule II prescriptions would be an accurate record of disposal for the quantity of controlled substance listed in that prescription?

A: For each prescription to stand on its own and contain everything you say it should contain those individual prescriptions would be a complete record.

To group them together to account for one drug they would be incomplete in so much that there are not enough dispensing records to account for all the drugs....

Q: So I suppose you cannot tell me whether any prescriptions were missing from Mr. Little's files?

A: There are records of disbursement missing be it a prescription, a theft or loss form or disposal record or any other record showing that that drug left the pharmacy.

I cannot accurately tell you how many of those forms.

There could be one, there could be a hundred. It depends on what amounts.

Q: So it could be zero prescriptions?

A: No.... It may if there is a theft or loss form missing or a disposal record missing ... some other required record outside of a prescription to show those drugs left the pharmacy.

Q: So in fact there may be no missing prescriptions?

A: That would only occur if there were missing theft or loss forms or disposal records.

(Pavlan Aff. Exhibit A (Lombardo Dep. at 65–70).)

■ Viewing this testimony along with Defendants' arguments in opposition to summary judgment, it is clear to the court that Defendants miss the aim of the Controlled Substances Act. A violation of the Act occurs each time the Government can prove that controlled substances are missing. Proven shortages, or overages for that matter, constitute record keeping violations under the statute. *Poulin*, 926 F.Supp. at 252. Other courts have so held. *United States v. Stidham*, 938 F.Supp. 808, 816 (S.D.Ala.1996) (general deficiencies in record keeping support a violation of the Act). To prove such a record keeping

violation, the Government need only demonstrate that a shortage or overage exists. The Government is not required to produce documents in support when none exist. *Poulin*, 926 F.Supp. at 252. If such documents existed there would be no shortage.

Granted, the Act makes clear that the maintenance of a "perpetual inventory" is not required of regulated pharmacies. 21 U.S.C. § 827(a)(3). A biennial inventory is all that the statute requires. 21 U.S.C. § 827(a)(1). However, accurate and complete records, reflecting the numbers of controlled substances on hand at any given time, is also undisputedly required by the Act. 21 U.S.C. § 827(a)(3). So, while the Act leaves the method in which a pharmacy chooses to maintain its records to its discretion, the onus is on each regulated pharmacy to keep complete and accurate records. This is fundamental to the strict liability mandated by the Act prior to the 1998 amendments.

This may seem harsh. In fact, there appears to be some agreement among the parties that, at least with respect to the shortages uncovered, the drugs were quite possibly missing through no fault of Defendants, having possibly been stolen from Little's Pharmacy by an unnamed employee. However, Defendants are not charged with a failure to maintain the required biennial inventory. They are charged civilly with a failure to maintain accurate records.[4]

The harsh result exemplified here may well be the reason why, in October of 1998, Congress changed the standard to be applied to one of negligence. As described, a pharmacy empowered to dispense controlled substances will now be held liable only if it knew or should have known about an illegal diversion, or inaccurate records,

and chose to do nothing. As applied here, however, the Act imposes strict liability.

■■■ Interestingly enough, Defendants' wilfulness, irrelevant for purposes of liability, may be considered by the court with respect to the imposition of civil fines. A prevalent methodology utilized by sister courts for imposing civil fines for record keeping violations is to weigh four factors extrapolated from the language of the Act: "(1) the willfulness of the violations; (2) whether, and to what extent the defendant profited from the illegal activity; (3) harm to the public; and (4) the financial capacity of the defendant to pay." *Poulin*, 926 F.Supp. at 253–54. *See United States v. Queen Village Pharmacy*, 1990 WL 165907 at *2 (E.D.Pa.1990); *United States v. Barbacoff*, 416 F.Supp. 606, 610 (D.D.C.1976). While this methodology bespeaks Congress' intention to impose varying fines for varying degrees of egregiousness, it also signals that Congress contemplated exacting fines for what may be considered the most minor of infractions. *Green Drugs*, 905 F.2d at 698.

Another tangle for Defendants is Little's individualized assertion of his Fifth Amendment right against self incrimination. (*See* Exhibits 4 and 5.) The court previously addressed this conundrum when the Government sought to compel Little, as well as Little's Pharmacy, to respond to certain interrogatories and requests for production of documents. When allowing the Government's motion, the court warned that, "[i]f Little maintains his reliance on a Fifth Amendment privilege, he risks certain adverse consequences." Mem. & Order (April 10, 1998) (citing *Hasbro, Inc. v. Serafino*, 958 F.Supp. 19, 23 (D.Mass.1997); *United States v. Lileikis*, 899 F.Supp. 802, 804 (D.Mass.1995); *Serafino v. Hasbro, Inc.*, 82 F.3d 515, 518 (1st

---

4. The timing of the investigation may also have proven unfortunate for Defendants. Had the administrative warrant and subsequent inspection not occurred in May of 1995, but in July, by which time Defendants may have conducted the appropriate biennial inventory, Defendants may well have realized that significant numbers of controlled substances were missing. Defendants then might have filed the appropriate theft and loss forms and rectified their records. This, of course, is mere speculation.

Cir.1996)). Those consequences are now made evident.

■ At present, the court must view the facts and inferences in a light most favorable to Defendants, the non-moving party. By asserting his Fifth Amendment privilege, however, Little has failed to offer any genuine and material facts to counter the copious record presented by the Government. Moreover, Little's assertion of the privilege "creates a compelling inference that the Government's allegations against [Defendants] are true." *U.S. v. Lileikis,* 929 F.Supp. 31, 37 (D.Mass.1996). This is particularly so given the substantial probative evidence offered by the Government in support of its motion for summary judgment. *See Hasbro Inc.,* 958 F.Supp. at 25.

■ The Government presents evidence that Defendants had significant undocumented shortages and overages of controlled substances on hand. (*See* Exhibit 2.) There is also evidence that Defendants failed to file several appropriate DEA forms relevant to shortages and overages and failed to have a power of attorney form on file for its pharmacist Fantasia per 21 C.F.R. §§ 1305.07 and 1305.09(e). (Exhibit 1 ¶¶ 6, 8–10.) On the day of the inspection the power of attorney form for Fantasia was never produced, although it was requested. (Lombardo Dec. ¶ 9.) It was purportedly provided two years later in the form of minutes from a meeting and only then in response to a court order. Such minutes, however, do not meet the regulatory requirements for a legally sufficient power of attorney, nor were they signed by Fantasia, another regulatory requirement whose violation mandates strict liability. 21 C.F.R. § 1305.07.

In response, Defendants have not presented any evidence from which the court could even reasonably infer that a dispute exists as to their strict liability under the Controlled Substances Act. As the First Circuit has explained,

> The existence of such an issue [of material fact] must be shown by resort to materials of suitable evidentiary quality. Such a showing cannot be manufactured by negative implication; that is to say, a party opposing summary judgment cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute.

*Collier v. City of Chicopee,* 158 F.3d 601, 604 (1st Cir.1998) (internal quotation marks omitted). Simply put, Defendants have failed to present "properly documented facts on which a trialworthy federal issue might rest." *Id.* Compare *Poulin,* 926 F.Supp. at 249 (proceeding to bench trial before imposition of fines under the Controlled Substances Act). Accordingly, the court will recommend that summary judgment be allowed on Counts I through IX.

■ The same holds true for Count X, which concerns the receipt of drugs and an incomplete 222 form. The only documentary evidence presented in this regard are invoices from the James Brudnick Company (Pl.Opp. (Docket No. 38) Exhibit 1) which were seized during the inspection on May 11, 1995. The invoices together with Lombardo's testimony demonstrate that the DEA Form 222, attached to the Government's motion for summary judgment at Exhibit 4, are inaccurate. Defendants make no contrary showing. Accordingly, the court will also recommend that Defendants be held strictly liable for the violations claimed in Count X.[5]

## IV. *CONCLUSION*

For the foregoing reasons, the court recommends that Defendants' motion to suppress be DENIED, that Defendants' motion for summary judgment be DENIED

---

5. For the same reasons that the court finds that the Government proffers sufficient uncontroverted evidence to recommend that it prevail at summary judgment, the court will conversely recommend that Defendants' motion for summary judgment be denied.

**188**

as well, and that the Government's motion for summary judgment, to the extent it seeks the imposition of strict liability, be ALLOWED. The imposition of fines by the trial court is for another day.[6]

April 6, 1999.

---

6. The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services*, 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega*, 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir.1980). *See also Thomas v. Arn*, 474 U.S. 140, 154–55, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.